KLUG v. KREISCH.

COVENANTS—BUILDING RESTRICTIONS—CHANGED CONDITIONS—EQUITY —INJUNCTION.

Where certain lots in a subdivision restricted to single private dwelling houses, to cost not less than $5,000, and to be set at least 50 feet from the sidewalk, were purchased and replatted with other land into business lots with a few exceptions, and a 50-foot strip was sold off for the widening of a street, so that a lot intended for residence purposes has lost its value as such, it is inequitable to enforce such restrictions thereon.

Appeal from Oakland; Doty (Frank L.), J. Submitted January 23, 1929. (Docket No. 72, Calendar No. 34,045.) Decided March 28, 1929.

Bill by William H. Klug against Steve Kreisch to enjoin the violation of building restrictions. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*Pelton & McGee,* for plaintiff.

*Perry & Lynch* (*Frank W. Atkinson,* of counsel), for defendant.

SHARPE, J.   The Yorba Linda Park subdivision, in the township of Royal Oak, in the county of Oakland, was platted in 1913. In 1914 the plaintiff purchased lots 48 to 83 inclusive, being all of the lots in said plat on the outer side of a circular driveway called Yorba Linda boulevard. His deed contained a covenant restricting the use of said lots to "single private   *   *   *   dwelling house purposes only," the cost thereof as to the lot in question to be not less than $5,000, and providing that all the dwellings should be set back at least 50 feet from the sidewalk, and that all plans and specifications for buildings must be approved by certain persons named therein before building operations should be begun. Lot 48 was somewhat irregular in shape. It had a frontage on the boulevard of 150 feet, ran along Woodward avenue 240 feet, and was 75 feet in width at its back end.

Some time after his purchase plaintiff took proceedings to vacate the plat as to the lots purchased by him, and had decree in the circuit court therefor. Soon thereafter he replatted this land and a considerable tract adjoining it into the Kensington Highlands, with a frontage of more than one-half of a mile on Woodward. What was formerly lot 48 is now included in lot 249, fronting on the boulevard, lot 250, the corner lot, and lot 251, with a frontage on Woodward of 130 and 80 feet respectively, and

a part of an alley next thereto on Woodward. The balance of the Woodward avenue frontage, except that used for streets, is platted into 90 lots, 20 feet in width. The only building constructed in the Kensington Highlands plat at the time of the hearing was one for business purposes on a 20-foot lot.

On April 28, 1925, plaintiff conveyed lot 250 to Morderos Mooradian and his wife by warranty deed. Some restrictions, immaterial here, appear therein, and also the following:

"It is understood that the purchaser agrees to abide by the restrictions formerly recorded with the register of deeds office."

The restrictions here referred to were those in the plat of the Yorba Linda Park subdivision.

In 1924 the State of Michigan, in pursuance of a plan for widening Woodward avenue, acquired by purchase a strip of land 50 feet in width off the easterly side of the Kensington Highlands subdivision, abutting the westerly line of that avenue. This reduced the size of lot 250 by nearly one-half, leaving it with a width of 68 feet at its northerly end, about 75 feet on its boulevard side, and about 100 feet on the new line of Woodward, with a considerably less depth on its opposite side.

It appears that the purchase by the State was made from the Mooradians, although they had no deed at that time. Counsel assume, as is probably the fact, that they were contract purchasers therefor.

In the summer of 1925, the defendant entered into a contract to purchase lot 250 from the Mooradians. Before doing so, he consulted the plaintiff, and was advised that the restrictions would prevent the erection of a gasoline and oil station and garage thereon, as contemplated by him. He concluded the purchase, however, and began work for the construction, when

plaintiff commenced this suit to enjoin him from doing so. The bill was dismissed by decree of the trial court, and plaintiff appeals therefrom.

It is plaintiff's contention that the restriction providing that all residences "shall be set back at least 50 feet from the sidewalk" applied to the boulevard only, and not to Woodward avenue. He was questioned about the effect on lot 251, which formed a part of lot 48 as platted, and said that a residence thereon might be built within four feet of the side-. walk on Woodward, but that its size would make it undesirable for residence purposes. He then testified:

"*Q.* So that would leave us only along this whole strip here in your subdivision, only one lot on Woodward avenue, lot 250, that you would consider desirable for residence purposes?

"*A.* That is all.

"*Q.* And do you think that anybody would buy that for residence purposes, Mr. Klug, and build on it when this situation next door exists and the conditions north all the way to Birmingham?

"*A.* That particular size you mean?

"*Q.* Yes.

"*A.* No, I don't.

"*Q.* Well, you know as a matter of fact if it ever had any value as a residence lot, it has lost it, hasn't it?

"*A.* It has."

Thad D. Seeley, who lived in the vicinity and had charge of securing the property to widen Woodward for the State, testified that lot 250 had "lost its value for residence purposes;" that in his judgment it was not practical to erect a residence thereon costing $5,000.

When the plaintiff prepared the plat of Kensington Highlands, he evidently appreciated the fact that

the frontage on Woodward was likely to be used for business purposes. This is indicated by the width of the lots fronting thereon. Had he left lot 48 of the Yorba Linda plat the same size it was, a desirable residence fronting on the boulevard could have been erected thereon. By dividing it up as was done, when the 50-foot frontage was taken by the State it left lot 250 of a size and shape so that it is not practical to erect a residence thereon which will conform to the requirements of the restrictions at the time he purchased it. We are in accord with the conclusion reached by the trial court that—

"The widening of Woodward avenue and the action on the part of the plaintiff in creating the business section immediately adjoining the lot in question has in my opinion created such a condition that the plaintiff cannot equitably enforce the present restrictions as to lot 250."

The reasoning of Mr. Justice STEERE in *Windemere-Grand, etc., Ass'n* v. *American State Bank,* 205 Mich. 539, is applicable to the facts here presented. As was said in *Putnam* v. *Ernst,* 232 Mich. 682, 687:

"These building restriction cases present such wide difference in facts that, in equity, but few rules can be applied generally. In the main, each case must be determined on its own facts."

We have given no consideration to the effect upon the restrictions caused by the vacation of the plat by decree of the court, as that question was not raised in the trial court or discussed in the briefs of counsel.

The decree is affirmed, with costs to appellee.

NORTH, C. J., and FEAD, FELLOWS, WIEST, CLARK, McDONALD, and POTTER, JJ., concurred.