MONROE v. MENKE.

1. Covenants—Building Restriction Cases.
   Each case involving enforcement of building restrictions of a subdivision must be considered by itself.

2. Same—Knowledge of Building Restrictions.
   In enforcing a building restriction, cognizance must be taken of the fact that purchase of lots in the subdivision was made with full knowledge of building restrictions imposed therein.

3. Same—Building Restrictions—Changes in Character of Neighborhood.
   In the consideration of whether or not a subdivision-wide building restriction should be enforced, the fact that all changes in the character of the neighborhood are outside the subdivision is noted.

4. Same—Building Restriction as Property Right.
   A building restriction may be a valuable property right.

5. Same—Building Restrictions—Greater Value for Business Use.
   The fact that lots in a subdivision, restricted to use for single residences only and with set-back lines, have a greater value as business lots than as residence lots is not a sufficient ground for lifting the restrictions.

Effect of change of conditions on enforcement of restrictions on use of land, see 5 Restatement, Property, § 564.

6. SAME—BUILDING RESTRICTIONS—CHANGES IN CHARACTER OF NEIGHBORHOOD OUTSIDE OF SUBDIVISION.

The fact that substantial changes in the character of the neighborhood have taken place outside of subdivision in which are located lots restricted to single-residence use and with set-back lines does not make it inequitable to enforce the restrictions as to lots within the subdivision where restrictions have been rigidly observed.

7. SAME—BUILDING RESTRICTIONS—ENFORCEMENT—CHANGE IN CHARACTER OF NEIGHBORHOOD OUTSIDE OF SUBDIVISION.

In 74-lot subdivision one lot wide and nearly one mile long, where defendants' three 44-foot lots at end of subdivision and separated from remaining 71 lots ranging from 52 to 84.4 feet in width by a boulevard 105 feet wide on which have been established several business places in immediate vicinity but in other subdivisions, plaintiff lot owners who had purchased their lots and built their homes relying upon the restrictions as to setback and use for single residences were entitled to protection against use of defendants' lots in violation of restrictions, there being no showing that such lots are not usable for residence purposes although concededly more valuable for business purposes.

Appeal from Wayne; Webster (Clyde I.), J. Submitted January 17, 1946. (Docket No. 60, Calendar No. 43,261.) Decided April 1, 1946.

Bill by Mark P. Monroe and others against Louis C. Menke to enjoin threatened violation of building restrictions. Decree for plaintiffs. Defendants appeal. Affirmed.

*Thomas L. Thomson,* for plaintiffs.

*Buckingham, Piggins & Rehn,* for defendants.

SHARPE, J. This cause involves restrictive covenants affecting premises located at the northwest corner of Yorkshire avenue and Warren avenue,

east, in the city of Detroit. The premises are known as lots 72, 73 and 74 Grosse Pointe Villas subdivision.

When the subdivision was platted in 1916, it consisted of 74 lots all fronting on the west side of Yorkshire avenue. Lots 1 to 71 inclusive are between Mack avenue and the present Warren avenue. These lots are 60 to 70 feet wide except lot 1 which is 84.40 feet and lot 71 which has a width of 52.05 feet. Lots 72, 73 and 74 are north of Warren avenue. When the subdivision was platted, Warren avenue had not been cut through. On the plat between lots 72 and 71 is a strip of land 105 feet wide designated as "Warren Boulevard," which consists of a strip of land 27.5 feet wide, with no designation, immediately south of lot 72 and a similar strip immediately north of lot 71. Between these two strips appears a lot 50 feet wide which is designated as lot A and reserved for railway purposes.

In the present proceeding plaintiffs Arthur L. Miller and Pearl A. Miller, his wife, are the owners of lot 66; plaintiffs Mack P. Monroe and Irene K. Monroe, his wife, are the owners of lot 68; and plaintiff Zeven Lucas is the owner of lot 63. All of these lots are south of Warren avenue. Defendants Louis C. Menke and Bertha Menke, his wife, and John Weckesser are the owners of lots 72, 73 and 74. Defendant Kenneth L. Moore Company is lessee under a lease with Menke and Weckesser of the easterly 40 feet of said lots. Reaume & Silloway, Inc., is interested in said lots as a prospective purchaser under a written agreement with defendants Menke and Weckesser. On September 23, 1944, defendant Kenneth L. Moore Company moved a small real estate office onto the property in question with the intention of using the same in its real estate business.

When the lots in this subdivision were platted in 1916 all deeds thereto contained restrictive covenants as follows:

"No building shall be erected on said property except a single residence set back 25 feet from the front lot line   *   *   *   and 10 feet off the north lot line, said residence to cost no less' than $3,500."

The subdivision is peculiar in that it is approximately a mile long and one lot wide. It runs from Mack avenue along the west side of Yorkshire to Warren avenue and the three lots in controversy north of Warren avenue. The three lots in question, considered as one piece, form a rectangular piece of property 132.35 feet along Yorkshire avenue and 120.23 feet along Warren avenue. There are no business places on Warren avenue in this subdivision, but west of the subdivision and on the north side of Warren avenue there are several buildings including a post office. On the corner of Outer Drive and Warren avenue there is a gas station, while east on Warren avenue there are several business places.

Plaintiffs brought suit in chancery to enjoin defendants from maintaining and using the building now upon said premises for the conducting of real estate or any other business and from using said premises or permitting them to be used in any way other than for residence purposes.

It is urged upon the part of the defendants that the property in question has little value as residence property, but as business property it has a value of $100 per foot or upwards; that there has been a complete change in the character of the neighborhood; that Warren avenue has become a business street; that the property has been assessed and zoned as business property; and that the use of these three lots as business property will not

injure or detract from the value of the other lots which are now zoned as residence property.

The trial court filed an opinion in which he found as a fact:

"The testimony shows there has been no change whatever; the change has been in another subdivision. There are no lots in this subdivision that face on Warren avenue, and there has been no change in this subdivision. The change has been in Warren avenue and in lots in other subdivisions. That cannot affect the lots in this subdivision. All streets around these three lots, north and south, east and west, for blocks and blocks in every direction, except these stores on lots facing on Warren avenue, all lots, I say, for blocks, are all residence. There has been no violation not only in this subdivision, but there has been no violation of the restrictions in these other subdivisions for blocks and blocks; residences only, north, south, east and west, of these particular lots, except Warren avenue. That is very important, of course, in applying these decisions.    *    *    *

"I am not able to find from this testimony, however, from the facts in this case, that these three lots cannot be used for residence purposes or that it is impractical to so use them. I could easily find, of course, that they are more valuable for business purposes, but that, as we have seen, is not the test.    *    *    *

"The three lots involved in this proceeding are 44 feet, 44 feet, and 44.32 feet, if you call them three lots, facing on Yorkshire. Of course if you call them one lot, why, as I say, there would be plenty to spare. If you consider each lot separately, then I find that they still would be wider than the adjoining lots north of them. They are not attached to the lots south of them, and this wide business street of Warren avenue intervenes between them, so that for practical purposes, in order to determine

this question, whether the record warrants a holding that these lots cannot be used for residence purposes, we must consider the lots immediately adjoining them on the north, all of which are used for residence purposes, and we find that the lot immediately north of them is 33.34 feet wide, the next lot is 40 feet, and the balance of the lots in that next block are all 40 feet, all the lots in the next block north are 40 feet, and in the third block, north, coming to Outer Drive, they are 36 feet and 39 feet wide; there are two 36 feet wide and nine 39 feet wide. So that surely under this record I cannot hold that it would be impractical to use these lots for residence purposes even if treated as three separate lots, and certainly there would be no question if we treated them as one lot."

In coming to our conclusion in this case we have in mind that each case must be considered by itself; that defendants Menke and Weckesser purchased lots 72, 73 and 74 in 1928 with full knowledge of the restrictions; and that all changes in the character of the neighborhood are outside the subdivision. We also have in mind that a building restriction may be a valuable property right; that because lots have a greater value as business lots than as residence lots is not a sufficient ground for lifting restrictions. See *Moore* v. *Curry,* 176 Mich. 456, and *Wineman Realty Co.* v. *Pelavin,* 267 Mich. 594.

The fact that substantial changes in the character of the neighborhood outside of the subdivision have taken place does not make it inequitable to enforce the restrictions.

We held in *Boston-Edison Protective Ass'n* v. *Goodlove,* 248 Mich. 625, 632:

"Although each case must be considered by itself, there are general rules which must govern. In a long line of decisions we have held that, notwithstanding a street has to a large extent become a busi-

ness thoroughfare, nevertheless, when certain sections have been restricted in their use to residential purposes on account of restrictive covenants contained in the deeds or the recorded plats of the subdivisions, such restrictive covenants will be upheld. Claims similar to those made by the defendant Goodlove were made in the case of *Moore* v. *Curry,* 176 Mich. 456. The court held that:

" 'No such radical change has been shown in the environments and character of the neighborhood in which the restricted district is situated as to invoke the limitation contended for and justify the court in refusing at this time the relief asked.'

"This principle has been consistently followed by a long line of subsequent cases including *Andre* v. *Donovan,* 198 Mich. 256; *Benzing* v. *Harmon,* 219 Mich. 532; *McQuade* v. *Wilcox,* 215 Mich. 302 (16 A. L. R. 997); *Swan* v. *Mitshkun,* 207 Mich. 70; *Sherrard* v. *Fine,* 222 Mich. 392; *Moreton* v. *Louis G. Palmer & Co.,* 230 Mich. 409. Defendant claims that these cases indicate that residential restrictions are removed from all lots abutting on a street when a large part of the frontage of the entire street is used for business purposes. The cases do not support this contention. Such changes do not affect a rigidly restricted district. The change in the character of certain sections of property bordering on a street does not affect a large neighborhood bordering on that street, where the lot owners in such neighborhood have strictly adhered to the restrictive covenants in their deeds.

"The evidence shows that the entire Boston boulevard subdivision, including five continuous blocks fronting on Hamilton boulevard, has remained a strictly residential neighborhood. There has always been compliance with the restrictive covenants in the deeds. To nullify these restrictions would be to work a great injustice to the owners of these properties."

In the case at bar plaintiffs and other residents in the subdivision purchased their property and built their homes relying upon the building restrictions. No substantial reason has been shown why these restrictions should be abrogated. Plaintiffs are entitled to protection against prohibited invasion.

The decree of the chancery court is affirmed, with costs to plaintiffs.

Butzel, C. J., and Carr, Bushnell, Boyles, Reid, North, and Starr, JJ., concurred.