MACK OUTER DRIVE IMPROVEMENT ASSOCIATION
v. MERRILL.

1. COVENANTS—RESTRICTION TO USE FOR SINGLE RESIDENCE.

Even though it be impossible to use a lot for residential purposes, although restricted for use as a single residence, it does not follow inevitably that the restriction should not be enforced.

2. SAME—RESTRICTIONS—SINGLE RESIDENCES—VIOLATIONS.

In suit to enforce subdivision-wide restriction to use of lots for single residences, finding of trial judge that there had been no violations of such restrictions was justified notwithstanding that on one of defendant's lots there had been erected a one-story frame real estate office under a special permit and later removed.

3. SAME—BUILDING RESTRICTIONS—VALUE FOR BUSINESS USE—REDUCTION IN SIZE.

The fact that lots in a subdivision, restricted to use for single residences only and with set-back lines, have a greater value as business lots than as residence lots is not a sufficient ground for lifting restrictions, especially where defendant's late husband, in purchasing the lots, had been advised of the restriction and knew that lots would be reduced in size by street widening proceedings and dedication of a portion for use as a public alley.

4. SAME—BUILDING RESTRICTIONS—CHANGES IN CHARACTER OF NEIGHBORHOOD OUTSIDE OF SUBDIVISION.

The fact that substantial changes in the character of the neighborhood have taken place outside of subdivision in which are located lots restricted to single-residence use and with set-back lines does not make it inequitable to enforce the restrictions as to lots within the subdivision where restrictions have been rigidly observed.

Appeal from Wayne; Toms (Robert M.), J. Submitted January 7, 1947. (Docket No. 4, Calendar No. 43,523.) Decided April 8, 1947.

Negative easements, see 5 Restatement, Property, § 452; change of conditions as equitable defense to enforcement, see § 564.

Bill by Mack Outer Drive Improvement Association, a Michigan corporation, and others against Gertrude H. Merrill to enforce building and use restrictions. Decree for plaintiff. Defendant appeals. Affirmed.

*Buckingham, Piggins & Rehn,* for plaintiff.

*Carl R. Thomsen,* for defendant.

NORTH, J. Pursuant to Act No. 36, Pub. Acts of 1929 (3 Comp. Laws 1929, § 13903 *et seq.* [Stat. Ann. § 27.501 *et seq.*]), plaintiffs instituted suit to obtain a declaratory decree to the effect that three lots owned by defendant were subject to a certain building and use restriction. Following a hearing on the merits, the trial judge decreed that the restriction governed the use of defendant's lots. Defendant has appealed.

All of the parties except the corporate plaintiff own lots in Grosse Pointe Manor subdivision. The corporate plaintiff is composed of property owners in Grosse Pointe Manor subdivision, who organized for various purposes including that of protecting their property interests.

The plat of Grosse Pointe Manor subdivision was recorded October 13, 1913. This subdivision, originally a part of Gratiot and Grosse Pointe townships but later included within the corporate limits of the city of Detroit, consists of 225 lots. It is narrow, providing frontage on but two streets, Audubon road and Whittier, and is bounded on the south by Mack avenue, and on the north by Cornwall. All of the lots in this subdivision, including defendant's lots, were sold subject to the following restriction: "No building shall be erected or placed on said premises other than a single residence, or nearer

than 35 feet to the line of Audubon road and 10 feet off north lot-line, or costing less than $4,000." This is the restriction which plaintiffs seek to enforce against defendant.

In Grosse Pointe Manor subdivision there are only four lots bounded on the south by Mack avenue. Defendant owns two of these lots, being Nos. 1 and 112. Defendant also owns lot No. 2 which is immediately to the north of lot No. 1. Title to these lots vested in defendant upon the death of her husband in 1930. Defendant's husband purchased a land contract vendee's interest in lots 1 and 2 on April 26, 1926 and purchased lot 112 under an executory land contract on December 28, 1926. On June 27, 1928, defendant and her husband received a warranty deed conveying lot 112 to them; and on February 25, 1929, they received a warranty deed conveying lots 1 and 2 to them.

For the purpose of widening Mack avenue, the city of Detroit commenced condemnation proceedings April 27, 1925; the verdict roll was filed April 1, 1926, and the verdict was confirmed May 7, 1926. As a result of the condemnation proceedings lots 1 and 112 were reduced approximately 28 feet in width. Lot 1 originally had a frontage of 86.10 feet, a rear of 95.34 feet, a depth of 160.55 feet; and after condemnation, a frontage of 58.82 feet, a rear of 68.26 feet, the depth remaining the same. Lot 112 originally had a frontage of 82.64 feet, a rear of 73.05 feet, a depth of 166.38 feet; and after condemnation a frontage of 55.28 feet, a rear of 45.74 feet, the depth remaining the same.

Lot No. 2 was reduced in size when a portion of the north side of said lot was dedicated as an alley. As a consequence lot 2 is practically reduced to the dimensions of 40 feet by 130 feet as a considerable

part of the west 30 feet of this lot was dedicated in order that the dedicated portion might join the existing alley, there being a jog between the older part of the alley and the part dedicated. An ordinance of the city of Detroit requires a three-foot "side yard on each side" of every residential lot and a rear yard of not less than 30 feet.

For some time the city of Detroit had zoned defendant's lots for business use, but later rezoned them for residential use. In November, 1941, defendant instituted suit against the city of Detroit and the commissioner of the department of building and safety engineering to void the residential classification. This suit was pending at the time the case at bar was commenced.

Mack avenue has developed from a dirt road to a paved avenue 120 feet in width since Grosse Pointe Manor subdivision was platted, and it seems inevitable that its frontage will become almost exclusively devoted to business enterprises. Examination of the record convinces one that defendant's lots are more valuable for business than residential use. The record also indicates that use of the lots for residential purposes is not desirable; but these three lots can be used for residential purposes notwithstanding their altered dimensions. Even if it were impossible for defendant to use her lots for residential purposes, which appears to be the case in so far as lot 225 (owned by third party) is concerned, it does not follow inevitably that the restriction should not be enforced.

Although a one-story frame real estate office, originally erected under a special permit, was located on lot 112 for several years, we do not regard this fact as of any particular significance in this case, as that structure appears to have been tempo-

rary in nature and was removed. Under the circumstances, the trial judge's finding that in this subdivision there have been no violations of the restriction in question is justified.

The record is replete with evidence that plaintiffs knew of the restriction in question and relying on it, erected expensive homes. Enforcement of this restriction against defendant's lots will undoubtedly have an adverse effect on their value. But lifting the restriction would inevitably cause a decrease in the value of all or many of the homes located in this subdivision. Defendant's husband knew that condemnation proceedings had been initiated when he purchased the lots in question. They were referred to in his purchase contract. The condemnation award of $3,099.60 for lot 1 was in fact credited by the vendor on defendant's husband's land contract and in effect reduced the purchase price by that amount. And it seems clear that defendant and her husband knew that a petition for the dedication of a portion of lot 2 as an alley had been filed by their assignor; and at any rate they acquiesced in the prior proceedings by executing a warranty deed transferring a portion of Lot 2 to the city of Detroit to be used for an alley. And while defendant's husband was apparently led by his assignor to believe that these lots would be usable for business purposes, plaintiffs were not parties thereto and defendant's husband was personally informed of the existence of the restriction in question.

The cases which defendant strongly relies on are clearly distinguishable. In *Klug* v. *Kreisch*, 246 Mich. 14, plaintiff replatted a large portion of an earlier subdivision and by reference incorporated in defendant's predecessor's deed the residential restriction applicable to the original subdivision.

However, plaintiff laid out the adjoining lots for business use, and apparently did not restrict their use; and he so bounded the lot in question that when a portion of it was taken as a result of condemnation proceedings it was impractical to use it for residential purposes. And further only one building had been erected in plaintiff's subdivision and that was for business purposes. Under these facts it would clearly have been inequitable to have compelled defendant to erect a residence in that portion of the subdivision that plaintiff had laid out for business purposes, and we so held.

In *Lemmon* v. *Wineland,* 255 Mich. 90, it appears that it was in effect impossible for defendants to use their lots for residence purposes, due to reduced measurements resulting from condemnation. In *Austin* v. *Van Horn,* 255 Mich. 117, not only was the condition of the entire neighborhood changed but the rights of innocent third parties were involved. In *Golden* v. *Davis,* 266 Mich. 7, it appears that the character of the subdivision itself had changed as a result of numerous violations of restriction within the subdivision.

In the case of *Taylor Avenue Improvement Association* v. *Detroit Trust Co.,* 283 Mich. 304, a gasoline service station had been built on a lot in a subdivision that was restricted to residential use. Plaintiffs sought a mandatory injunction to compel the removal of the service station. As the subdivision was literally surrounded by business places, and as plaintiffs were unable to show that they were materially affected by the presence of the gasoline station or would be substantially benefited by its removal, the relief prayed for was denied and the residential restriction was lifted as to a portion of the lot in question, subject to strict conditions. It is one thing to lift a residential restriction as to a

portion of a lot upon which a business structure has been erected and resulted in no injury to complainants whose properties were surrounded by business establishments, but quite another to lift residential restrictions on vacant lots in a subdivision which has been developed and maintained as the site of costly homes the value of which would certainly depreciate if the way were cleared for the establishment of business enterprises within the subdivision.

The instant case is in the legal field of and controlled by *Monroe* v. *Menke,* 314 Mich. 268. We quote the following from the headnotes:

"The fact that lots in a subdivision, restricted to use for single residences only and with set-back lines, have a greater value as business lots than as residence lots is not a sufficient ground for lifting the restrictions.

"The fact that substantial changes in the character of the neighborhood have taken place outside of subdivision in which are located lots restricted to single-residence use and with set-back lines does not make it inequitable to enforce the restrictions as to lots within the subdivision where restrictions have been rigidly observed."

The equities in the case at bar preponderate in favor of plaintiffs who knew of the restriction in question and relying on it erected expensive homes. The restriction has been observed throughout the subdivision. Defendant obtained title to the lots in question upon the death of her husband who at the time he purchased these lots knew that they were subject to the restriction in question and knew that they would be reduced in size. Further, it is possible to use these lots for residential purposes, though it would be more profitable to devote them to business use.

See *Swan* v. *Mitshkun,* 207 Mich. 70, citing numerous cases, among them *Moore* v. *Curry,* 176 Mich. 456, wherein we said:

"The only equitable consideration for refusing this relief (from restrictions), under present conditions, is that the lots on Woodward avenue would sell for more with the restrictions removed. This is not sufficient."

The decree entered in the circuit court is affirmed. Costs to appellees.

CARR, C. J., and BUTZEL, BUSHNELL, SHARPE, BOYLES, REID, and DETHMERS, JJ., concurred.