BRIDEAU *v.* GRISSOM.

1. APPEAL AND ERROR—CHANCERY CASES—INJUNCTION—BUILDING
RESTRICTIONS.

*De novo* review is accorded a chancery case involving injunction
against violation of building restrictions, determination of each
case being necessarily limited to a consideration of the facts
found therein.

2. COVENANTS—RESIDENTIAL USE RESTRICTIONS—INTERMITTENT NON-
CONFORMING USE.

Finding of trial court in suit to enjoin use of 3 lots at rear of
business frontage along edge of subdivision otherwise limited
to residential use that the use of 2 lots most remote from the
business frontage had not been of such a nature as to give
notice to purchasers that a nonconforming use existed or was
claimed is affirmed, where it was only intermittent.

3. SAME—RESIDENTIAL USE RESTRICTIONS—LACHES—WAIVER—VIO-
LATIONS IN OTHER BLOCKS OF SUBDIVISION—CHANGE OF NEIGHBOR-
HOOD.

Laches and waiver are not applicable defenses in a suit to enjoin
violation of residential use restrictions of a subdivision, where
violations upon which such defenses are based are in other
blocks of subdivision and not in such proximity to plaintiff's
land as to be especially and directly injurious to him and evi-
dence presented does not show a change in the character and
usage of the neighborhood.

4. SAME—RESIDENCE RESTRICTIONS—PROLONGED NONCONFORMING USE
—PARKING.

Lot in residential street across alley from rear of commercial
frontage facing street at edge of subdivision, which lot had

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 703.
[2, 3, 4, 6] 14 Am Jur, Covenants, Conditions and Restrictions §§ 192
*et seq.*
[5] 14 Am Jur, Covenants, Conditions and Restrictions §§ 302–307.
[7] 14 Am Jur, Costs §§ 92, 99.

been acquired by deed not containing building or use restriction sought to be enforced and which had been used for nonconforming purposes somewhat more burdensome than commercial parking *held,* properly relieved from restriction as to residential use because of prolonged nonconforming use.

5. SAME—NEGATIVE RECIPROCAL EASEMENT—CHANGE IN ZONING ORDINANCE—CHANGE OF CIRCUMSTANCES.

A change in zoning ordinance does not operate alone to destroy obligations involved in a negative reciprocal easement but is a factor to be considered in determining whether such a change of circumstances has occurred as will permit an equity court to not enforce the restriction.

6. SAME—RESIDENCE USE—RACIAL RESTRICTION—SEVERABILITY.

Restriction in deed limiting use of all, except certain specifically exempted, lots to residence purposes, providing a minimum building value and setback line and in a separate sentence "These premises shall not be leased nor sold to nor occupied by any person other than one of the Caucasian race" was not void and unenforceable, since the void racial restriction is severable from the remainder of the paragraph.

7. COSTS—BRIEFS.

No costs are allowed upon affirmance of decree, where appellee filed no brief.

Appeal from Macomb; Spier (James E.), J. Submitted November 8, 1962. (Calendar No. 65, Docket No. 49,142.) Decided April 5, 1963.

Bill by Lawrence J. Brideau, June A. Brideau, Frank Sekela, and Julia Sekela, as property owners in class action, against Ruth Grissom to enforce building and use restrictions as to 3 lots and prohibit use thereof for parking purposes. Cross-bill for declaratory judgment asking that restrictions be determined void and that lots might properly be used for commercial parking. Decree for plaintiffs as to 2 lots nearest residential area, and for defendant as to 1 lot closest to restaurant business. Defendant appeals. Affirmed.

*Archer, Kenney & Wilson* (*Robert J. Wilson,* of counsel), for defendant.

KAVANAGH, J.   Plaintiffs are the owners and occupants of 2 homes and lots on State Park avenue, a residential street in the city of Center Line. Defendant is the owner and occupant of business lots in the subdivision fronting on Van Dyke at the corner of State Park avenue, along with 3 lots on State Park avenue immediately adjacent to and in the rear of the business lots on Van Dyke.

Plaintiffs sought to enjoin defendant from violating the building or use restrictions contained in the deed covering the lots in the subdivision.   Plantiffs claim the 3 lots of defendant—lots 279, 280, and 281 —are restricted to residential use only.   Defendant is using these lots as a black-topped, illuminated parking lot in connection with a Howard Johnson restaurant fronting on Van Dyke.

The plat of the subdivision in question was recorded in 1924.   The subdivision fronts on Van Dyke avenue, a State highway running north and south. It is 3-1/2 blocks north and south by 2 blocks east and west.   State Park avenue is the northernmost east-west street.   Proceeding south, the cross streets are respectively Sterling, Superior, and Standard, which last mentioned street marks the southern boundary of the subdivision.   Of the 238 lots in the subdivision, the 38 fronting on Van Dyke are commercial lots, reserved for such usage by a deed recorded in 1927.

Defendant received her deed to lot 281, the lot immediately adjacent to the alley in the rear of the business lots on Van Dyke, in September, 1947.   The deed did not contain a building or use restriction. She received the deed to the other 2 lots in September, 1950.   This deed contained the clause, "except building and use restrictions as contained in book

229 of deeds, page 301." The deed in liber 229 referred to contains the following restrictions:

"Said lots shall be used for residence purposes only and any residence erected thereon shall cost not less than $2,500 each, and such residence shall stand back 20 feet from the front lot line. These premises shall not be leased or sold to nor occupied by any person other than one of the Caucasian race."

Defendant appeals from the entry of a decree permanently enjoining the use of lots 279 and 280 for the purpose of parking vehicles in conjunction with a commercial parking lot. Relief was denied as to lot 281.

Defendant presents the same questions raised below:

1. Are plaintiffs estopped from enforcing a negative reciprocal easement due to laches, and have they waived their rights to object to defendant's use of the 3 lots in question?

2. Has there been a sufficient change in the character and usage of the neighborhood to make the building and use restrictions unenforceable in equity?

3. Are the building and use restrictions void and unenforceable in their entirety, due to the unconstitutional racial restriction contained therein?

Our role in cases of this nature was succinctly stated in *Harrigan* v. *Mulcare,* 313 Mich 594, 596:

"In chancery cases involving building restrictions, as in other chancery appeals, we review *de novo.* Each case must necessarily be determined on its own facts, and each case must stand by itself as the facts in each case are different."

Defendant's theory of laches and waiver rests on her contention that lots 279 through 281 have been used for commercial purposes for many years and

that other lots in the subdivision ostensibly restricted to residential use have been similarly utilized.

There appears to have been little, if any, development on State Park avenue until 1956 and 1957, when plaintiffs bought their 2 houses of modern brick construction. At that time the street was built up with moderately-priced brick homes. Van Dyke avenue business frontage adjacent to lot 281 and the south corner of State Park avenue was occupied and used as a used car lot, being brilliantly lighted and an active business being conducted thereon. The used car lot had been in operation since 1947.

On the rear of lot 281, immediately across the alley from the business lots, a concrete block building with a flat roof, about 24 by 50 feet, and an abutting metal building in the nature of a 2-car garage, about 18 by 20 feet, were being used for reconditioning the used cars, bumping, painting, et cetera. The lot was also being used for the parking of employees' cars, together with temporary parking of some of the used cars being worked upon, from time to time. These buildings had been constructed some time prior to 1951.

Defendant showed that from 1947 until the completion of the parking lot in 1958, these 3 lots were used intermittently for parking purposes and occasionally for storage of new vehicles. From 1947 to 1951 a greater use was made of lots 279 and 280 than has been made since that time. At one time the lots were covered with cinders, but at the time plaintiffs purchased their property weeds and grass covered the property.

Plaintiff Lawrence J. Brideau testified that he had never observed cars parked on lots 279 and 280 except on 1 occasion when the used car lot was being black-topped and the cars were moved onto the 2 lots overnight.

Plaintiff Frank Sekela, who moved into his house approximately a year and one-half after Brideau, testified he had never seen cars parked on lots 279 and 280.

From their testimony it is clear plaintiffs relied upon the subdivision building and use restrictions, after being assured by their vendors that lots 279, 280, and 281 could only be used for residential purposes.

With respect to violations elsewhere in the subdivision, defendant showed that 1 block south of State Park a Buick salesroom covers the entire business frontage on Van Dyke between Sterling and Superior. Behind the showroom, a cinder block bump shop, 40 feet by 100 feet, has been maintained since 1951. Further space was utilized for the storage of cars. These operations were maintained on lots 167 through 172, which front on the north side of Superior.

Defendant offered evidence that several lots fronting on the south side of Superior and immediately west of the alley behind the Van Dyke business frontage have been utilized for parking purposes by a medical clinic. These lots appear to be 4 in number, namely, 163 through 166.

In 1954 the zoning ordinance of the city of Center Line was changed to permit off-street parking on an area running 180 feet west from the alley separating the business lots on Van Dyke from the rest of the subdivision. This 180 feet includes lots 279, 280, and 281.

As soon as defendant began excavation work on the parking lot in 1958, plaintiff Brideau, through his attorney, notified defendant of his intention to commence legal action if work continued.

Having these facts before it, the trial court found that plaintiffs were not guilty of laches nor had

waived their rights with respect to lots 279 and 280. We agree with the court's conclusion that,

"the unenclosed transient use of lots 279 and 280 for parking purposes in connection with the sale of used cars from lots facing Van Dyke avenue, was not of such a nature as to give notice to purchasers of adjacent lots on that street that a nonconforming use existed or was claimed, particularly since such use was intermittent at the time the recent residential development on State Park avenue was going on."

Nor are laches and waiver applicable as a defense with respect to the other violations in the subdivision, for we stated in *Scott* v. *Armstrong,* 330 Mich 504, 516, quoting language from *Farley* v. *Finn,* 226 Mich 205, 208, 209:

" 'This Court has several times held in the last few years that failure of an owner in restricted territory to take action for prevention of violations in other blocks or on other streets in the restricted district does not necessarily deprive him of the right of enforcing the restrictions when a violation is attempted in proximity to his property which would especially and directly be injurious to him.' "

With respect to lot 281, the trial court found as follows:

"The situation as to lot 281 is different. Here there were no restrictions in the deed. Also there was an obvious nonconforming use existing and continued in the form of buildings and business use. No action has ever been taken to prevent this use and plaintiffs had full notice thereof. The present use is similar and consistent with its prior use, and in fact is less burdensome than the prior auto paint and bumping shop insofar as the adjoining residential area is concerned, or at least is not creating any greater burden or extension of nonconforming use."

This determination is consistent with the evidence presented in the record. We, therefore, agree that relief was properly denied with respect to this lot.

We also concur with the chancellor's determination that the restrictions are not unenforceable for the reason that a change in the character and usage of the neighborhood has occurred.

The violations maintained behind the Buick salesroom on the lots fronting on Superior are a minimum of 302 feet from the rear lot lines of lots 279, 280, 281 and plaintiff Sekela's lot 278. The violations are 460 feet south of the front or south lot line of plaintiff Brideau's lot. The remainder of the lots immediately west of lots 167 through 172 are undeveloped. There is no permanent structure denoting the area behind the medical clinic as a parking area. The extent to which homes are located on the remaining lots on this the south side of Superior is not indicated.

Homes occupy the lots on the north and south sides of Sterling the next street south of State Park. State Park itself is entirely built up with modern brick homes.

The change in the zoning ordinance cannot operate to destroy the obligations involved in the restrictions. *Phillips* v. *Lawler,* 259 Mich 567. Such change is only a factor to be considered in determining whether a change of circumstances has occurred that an equity court will not enforce the restriction. *Sandenburgh* v. *Michigamme Oil Co.,* 249 Mich 372.

From the foregoing we are unable to say that the original plan of development has been subverted by a change in the character and usage of the neighborhood.

With regard to the racial restriction, we agree with the conclusion reached by the trial court that this restriction is severable from the remainder of the paragraph. The racial restriction is void and un-

enforceable but, since it bears no relation to and is entirely distinct from the building and use restrictions, the latter are legal and enforceable.

The decree of the trial court is affirmed. No costs are allowed, appellees not having filed a brief.

CARR, C. J., and DETHMERS, KELLY, BLACK, SOURIS, and OTIS M. SMITH, JJ., concurred.

O'HARA, J., took no part in the decision of this case.