ROFE v ROBINSON

Docket No. 65728. Argued November 10, 1981 (Calendar No. 8).—
Decided December 22, 1982.

Edward Rofe and other owners of property in Hickory Knolls
Subdivision, Bloomfield Township, brought an action in the
Oakland Circuit Court against David Robinson, Marvin L.
Robinson, and the Robinson Brothers Realty Company, to
enforce deed restrictions limiting use of subdivision lots to
single family residential purposes and for an injunction enjoin-
ing the construction of office buildings by the defendants on
certain subdivision lots. The circuit court, Frederick C. Ziem, J.,
held the restrictions valid and issued a permanent injunction.
The Court of Appeals, N. J. Kaufman, P.J., and D. C. Riley and
Theiler, JJ., reversed on the ground that the character of the
subdivision had changed (Docket No. 78-3284, and *On Remand,*
Docket No. 51131). The plaintiffs appeal.

In an opinion by Justice Levin, joined by Chief Justice
Fitzgerald and Justices Kavanagh, Williams, Coleman, and
Ryan, the Supreme Court *held:*

Changes in a highway bordering the subdivision and partial
condemnation along the highway have not so changed the
character of the subdivision as to subvert the purpose of the
deed restrictions and render enforcement inequitable, nor has a
change in zoning overridden the restrictions.

1. Deed restrictions are property rights and will be protected
where they are of value to a property owner asserting the
restrictions if the owner is not estopped from seeking enforce-
ment. Economic impracticability does not justify lifting deed
restrictions. In this case, the plaintiffs purchased their property
in reliance on the restrictions, and the defendants were aware
of them when they purchased their lots.

2. Deed restrictions will not be lifted unless the character of

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 20 Am Jur 2d, Covenants, Conditions and Restrictions § 169.
[2] 20 Am Jur 2d, Convenants, Conditions and Restrictions §§ 180,
186.
[3] 20 Am Jur 2d, Covenants, Conditions and Restrictions §§ 277, 281
*et seq.*
[4] 20 Am Jur 2d, Covenants, Conditions and Restrictions § 277.

a subdivision has changed in such a way as to subvert the original purpose of the restrictions. The change in zoning classification of the defendants' lots to office usage is not sufficient evidence of a change in character to require the lifting of the restrictions. A change in zoning, of itself, cannot override prior deed restrictions; rezoning is not a change in character. Likewise, the use of a previously residential structure on one of the lots for business purposes does not change the character of the subdivision, nor does the evolution and widening of a bordering road. The subdivision remains substantially residential.

3. The case is remanded to the Court of Appeals for consideration of the issues of laches, waiver, and interpretation of the deed restrictions not previously considered.

Reversed and remanded.

93 Mich App 749; 286 NW2d 914 (1979) reversed.

99 Mich App 404; 298 NW2d 609 (1980) reversed.

1. COVENANTS — RESTRICTIONS BY DEED — ENFORCEMENT.

Deed restrictions are property rights and will be protected where they are of value to a property owner asserting the restrictions who is not estopped from seeking enforcement.

2. COVENANTS — RESTRICTIONS BY DEED — ENFORCEMENT.

Deed restrictions will not be lifted unless the character of a subdivision has changed in such a way as to subvert the original purpose of the restrictions.

3. COVENANTS — RESTRICTIONS BY DEED — ENFORCEMENT — ZONING.

A change in the zoning classification of a number of lots on the border of a subdivision from residential to office use, the use of one of the lots for business purposes, and the evolution of a bordering road into a business district and the widening of the road were insufficient to warrant lifting residential deed restrictions where the character of the subdivision remained substantially residential.

4. COVENANTS — RESTRICTIONS BY DEED — ZONING.

A change in zoning, of itself, cannot override prior deed restrictions; rezoning is not a change in the character of the restricted property.

*Eggenberger, Eggenberger, McKinney & Weber, P.C.* (by *Stephen L. Weber),* for plaintiffs.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by
*W. A. Steiner, Jr.,* and *Dennis M. Haffey)* for de-
fendants.

LEVIN, J. This action concerns the enforceability
of deed restrictions. Plaintiffs and defendants are
property owners in the Hickory Knolls Subdivi-
sion. The deed restrictions provide that all build-
ings in the subdivision are to be restricted to
residential, single-family use. Defendants, how-
ever, seek to construct three one-story office build-
ings on two of the lots in this subdivision. The
front of these buildings would face plaintiffs' ad-
joining lots. Defendants, under the zoning ordi-
nance, are required to build a six-foot wall along
the border separating office use from residential
use. Defendants' proposed site plans provide for
parking along this wall. Plaintiffs brought this
action seeking a permanent injunction enjoining
defendants from developing their lots as office
sites.

The trial court upheld the restrictions and is-
sued the permanent injunction plaintiffs re-
quested. The Court of Appeals reversed, finding a
change in the character of the subdivision. We
reverse the decision of the Court of Appeals and
remand for consideration of the issues the Court of
Appeals found unnecessary to address.

I

Hickory Knolls Subdivision is triangular and
consists of 45 lots. The subdivision is bounded by
Telegraph Road on the east, Franklin Road on the
west, and Hickory Grove Road on the south. Lots 1
through 12 are accessible only from Telegraph
Road and comprise the eastern side of the triangle.
Each of lots 1 to 12 is vacant, except lot 2. Until

1971, no commercial development occurred on any of the lots in the subdivision. However, in 1971, the residence on lot 2 was converted to office use. There has been no objection by the residents of the subdivision to the use of the building on lot 2 as an office.

In 1956, the subdivision was zoned for single-family residential use. In 1968, Bloomfield Township changed the zoning on lots 1 to 12 to the O-1 classification, limiting construction to office buildings and prohibiting the construction of single-family residences.

In 1974, the easterly 54 feet of lots 7 and 8 were taken by the Michigan State Highway Department to widen Telegraph Road to six lanes with right and left turn lanes at some corners, leaving lots 7 and 8 with a depth of approximately 146 feet from Telegraph Road. According to the highway engineer who testified at trial, curb cuts for driveways onto Telegraph Road would have to be 20 or 30 feet wide. Deed restrictions require a dwelling to have a minimum living area of 1,200 square feet, or two floors of 800 square feet each, and prohibit any building within 10 feet of a property line.

Across from the Hickory Knolls Subdivision, on the other side of Telegraph Road, is the Hickory Grove Subdivision, a residential area. There is a berm separating this subdivision from Telegraph Road. The area along Telegraph Road north of Franklin Road is zoned for office development and consists of several office buildings. The land along Telegraph Road south of Hickory Grove Road is vacant for some distance.

Plaintiffs argue that the deed restrictions should

be enforced because the restrictions constitute a valuable property right and because there have been no changes in the subdivision to render enforcement of the restrictions inequitable.

Defendants contend that the restrictions are unenforceable because it is illegal (due to the rezoning) and impractical to build residences on lots 7 and 8. Defendants further contend that the character of the subdivision has changed so that it is inequitable to enforce the restrictions, citing factors such as rezoning, the use of the building on lot 2 as an office, the evolution of Telegraph Road, and the condemnation of 54 feet of lots 7 and 8 for the widening of Telegraph Road. We are not persuaded by these arguments.

II

Deed restrictions are property rights.[1] The courts will protect those rights if they are of value to the property owner asserting the right and if the owner is not estopped from seeking enforcement.[2]

Defendants argue that it is impractical to build residences on lots 7 and 8. They contend that a residence cannot be economically built or sold and that the deed restrictions will require the lots to remain permanently vacant and useless.[3] Plain-

---

[1] *Cooper v Kovan,* 349 Mich 520, 531; 84 NW2d 859 (1957); *Bigham v Locklin,* 275 Mich 545, 553; 267 NW 564 (1936); *Signaigo v Begun,* 234 Mich 246, 250; 207 NW 799 (1926).

[2] *Jones v Schaffer,* 332 Mich 190, 193; 50 NW2d 753 (1952); *Carey v Lauhoff,* 301 Mich 168, 172; 3 NW2d 67 (1942); *Wood v Blancke,* 304 Mich 283, 287-288; 8 NW2d 67 (1943); *Signaigo v Begun,* 234 Mich 246, 251; 207 NW 799 (1926).

[3] The defendants might have been entitled to compensation for the entire value of lots 7 and 8 if the condemnation substantially destroyed the value of those lots.

tiffs' witness testified that there is always a market for any property with appropriate price adjustments and lots 1 through 12 could be sold as residential lots.

Economic impracticability does not itself justify lifting building restrictions.[4] Plaintiffs purchased their property, in apparent reliance on the deed restrictions, and defendants were on notice of the restrictions when they purchased their lots. This Court has long recognized that such restrictions create valuable property rights. "The right, if it has been acquired, to live in a district uninvaded by stores, garages, business and apartment houses is a valuable right."[5] In *Cooper v Kovan,* 349 Mich 520, 530-531; 84 NW2d 859 (1957), this Court said:

"Home owners seek, by purchasing in areas restricted to residential building, freedom from noise and traffic which are characteristic of business areas. How much in dollars the peace and quiet of this neighborhood is worth, or how much the contemplated major business invasion would diminish that value, would be hard to establish. But it is clear in our mind that residential restrictions generally constitute a property right of distinct worth."

The change in zoning does not support defen-

[4] In *Mack Outer Drive Improvement Ass'n v Merrill,* 317 Mich 24, 27; 26 NW2d 583 (1947), this Court found that defendants' lots were more valuable for business than residential use and that the use of the lots for residential purposes was not desirable although three of the lots could be so used. The Court said:

"Even if it were impossible for defendant to use her lots for residential purposes, which appears to be the case in so far as lot 225 (owned by third party) is concerned, it does not follow inevitably that the restriction should not be enforced."

See, also, *Monroe v Menke,* 314 Mich 268, 273; 22 NW2d 369 (1946); *Wineman Realty Co v Pelavin,* 267 Mich 594, 599; 255 NW 393 (1934); *Moore v Curry,* 176 Mich 456, 464; 142 NW 839 (1913).

[5] *Signaigo v Begun,* 234 Mich 246, 250; 207 NW 799 (1926).

dants' challenge to the validity of the deed restriction. If, as the defendants contend, the property as restricted is substantially valueless regardless of the zoning, then it is the deed restriction and not the zoning which brought about the loss of value.

Even if the zoning were relevant, it is well established in this state that a change in zoning cannot, by itself, override prior restrictions placed in deeds.⁶ Zoning laws determine property owners' obligations to the community at large but do not determine the rights and obligations of parties to a private contract. These are separate obligations, both of which may be enforceable.⁷

Defendants next argue that the character of the subdivision has changed so that enforcement of the restrictions would be inequitable. In support of this claim, defendants cite factors such as rezoning, the use of lot 2 for business purposes, and the

⁶ *Brideau v Grissom,* 369 Mich 661, 668; 120 NW2d 829 (1963); *Morgan v Matheson,* 362 Mich 535, 541; 107 NW2d 825 (1961); *Cooper v Kovan,* 349 Mich 520, 532; 84 NW2d 859 (1957); *Hisle v Sambrook,* 346 Mich 680, 682; 78 NW2d 649 (1956).

While defendants assert that there is authority for the proposition that valid zoning extinguishes deed restrictions, they cite no case law which supports this proposition. *Lamb v City of Monroe,* 358 Mich 136; 99 NW2d 566 (1959), does not stand for the proposition that zoning can override deed restrictions. Although *Lamb* involved a change in a zoning ordinance, the deed restrictions were abrogated because "the subdivision had lost the residential character originally intended", and the "subdividers themselves had subverted their original interest", 358 Mich 143.

The weight of authority is that zoning does not override deed restrictions. See cases collected in 26 CJS, Deeds, § 171c(2), p 1181 ff.; 20 Am Jur 2d, Covenants, Conditions, and Restrictions, § 277, p 837 ff. Because defendants provide no reason to doubt the validity of this rule, it is not appropriate to reconsider it. If this issue were properly raised and supported by argument, it would be necessary to consider whether a rule permitting zoning regulations to override deed restrictions would be prohibited by US Const, art I, § 10, "No State shall * * * pass any * * * Law impairing the Obligation of Contracts", and whether the Legislature, in delegating zoning authority to municipalities, also delegated the power to override private deed restrictions.

⁷ We make no finding regarding the legality of the zoning ordinance because that issue is not presently before us.

evolution and widening of Telegraph Road. However, the restrictions will not be lifted unless the character of the subdivision has changed in such a way as to subvert the original purpose of the restrictions.[8] Because the character of the subdivision has not so changed, defendants are not entitled to relief on these grounds.[9]

A change in zoning is not sufficient evidence of a change in the character of an area to require lifting residential restrictions. In *Brideau v Grissom,* 369 Mich 661, 668; 120 NW2d 829 (1963), this Court said that "[t]he change in the zoning ordinance cannot operate to destroy the obligations involved in the restrictions. * * * Such change is only a factor to be considered in determining whether a change of circumstances has occurred that an equity court will not enforce the restriction." In *Brideau,* this Court found the restriction to be enforceable in spite of the zoning change, because this Court was "unable to say that the original plan of development [had] been subverted by a change in the character and usage of the neighborhood."[10] A change in zoning is thus only relevant if it is indicative of a change in the character of the area. Rezoning itself is not such a change.

We are also unpersuaded that use of one of the 45 lots for office purposes so changes the character of the subdivision as to render the restrictions

[8] *Scott v Armstrong,* 330 Mich 504, 515; 47 NW2d 712 (1951); *Boston-Edison Protective Ass'n v Goodlove,* 248 Mich 625; 227 NW 772 (1929); *Carey v Lauhoff,* 301 Mich 168; 3 NW2d 67 (1942).

[9] In *Bohm v Silberstein,* 220 Mich 278, 282; 189 NW 899 (1922), this Court said "[t]he question presented is not whether any person would, under existing conditions, purchase vacant property in the subdivision for residential purposes, but may the plaintiffs enjoy the homes which they have erected relying upon the restrictions, free from the disturbances which the conduct of business therein would necessarily produce?"

[10] *Brideau, supra,* p 668.

inequitable. This structure was built as a residence and previously used as such, although now it is used for business purposes. The use of this building for office purposes has not materially changed the character of the subdivision. The subdivision has remained substantially residential.[11]

Likewise, the evolution and widening of Telegraph Road does not justify lifting the restrictions. The widening of Telegraph Road has not changed the character of the subdivision. The subdivision is still substantially residential. Similarly, the evolution of Telegraph Road into a business district has not rendered enforceability of the restrictions inequitable, because the subdivision has not lost its character as a residential area. "The fact that substantial changes in the character of the neighborhood outside of the subdivision have taken place does not make it inequitable to enforce the restrictions."[12] Furthermore, as this Court said in *Redfern Lawns Civic Ass'n v Currie Pontiac Co,* 328 Mich 463, 470; 44 NW2d 8 (1950), "there must of necessity be a dividing line somewhere".[13]

---

[11] See *Scott v Armstrong,* 330 Mich 504, 515; 47 NW2d 712 (1951), quoting *Misch v Lehman,* 178 Mich 225, 228; 144 NW 556 (1913):

" 'The true rule seems to be that, even after 1 or more breaches, equity will grant relief if the restriction can be shown to be of value to complainant, and such breaches have not resulted in a subversion of the original scheme of development resulting in a substantial, if not entire, change in the neighborhood.' "

In *Boston-Edison Protective Ass'n v Goodlove,* 248 Mich 625; 227 NW 772 (1929), one of the property owners in the restricted area practiced medicine in his home. However, this Court upheld the restriction to prevent erection of an office building, finding that the entire subdivision was strictly residential. Similarly, in *Carey v Lauhoff,* 301 Mich 168; 3 NW2d 67 (1942), this Court upheld residential restrictions and found that the neighborhood was still residential even though there were 23 restriction violations in 189 lots. In *Scott v Armstrong,* fn 8 *supra,* there were five violations of the building restrictions. Because the violations did not result in subverting the original scheme of development, these restrictions were also upheld.

[12] *Monroe v Menke,* 314 Mich 268, 273; 22 NW2d 369 (1946).

[13] "The only equitable consideration in the case at bar appears to be

Although there has been a change in the charac-
ter of Telegraph Road, this change has not sub-
verted the purpose of the residential restrictions so

the undesirability of using the lots in question for residence purposes.
On this point it may be observed that there must of necessity be a
dividing line somewhere. The original subdividers made no provision
for possible business lots along Grand River avenue. It is inevitable
that all lots on the fringe of a residential district may, with the
changes of the surrounding neighborhood, become a buffer, between
the residential area and a business or commercial area. It is one of
the factors inherent in considering the nature and value of such
property. To lift the restriction under consideration here on the lots
in question would only cut down this desirable residential area and
create another buffer area. To permit the dividing line to be moved in
the case at bar thereby creating another buffer district, now composed
of both residences and vacant property, does not present sufficiently
strong equitable considerations."

Similarly, in *Bohm v Silberstein,* 220 Mich 278, 282; 189 NW 899
(1922), quoting *Swan v Mitshkun,* 207 Mich 70, 74; 173 NW 529
(1919), this Court said:

" '[T]hose owning property in a restricted residential district or
neighborhood, and especially those who have their homes there, and
been led to buy or build in such locality by reason of restrictive
covenants running with the land imposed upon the street, block or
subdivision in which they have purchased, are entitled to protection
against prohibited invasion regardless of how close business may
crowd around them on unrestricted property, provided the original
plan for a residential district has not been departed from in the
restricted district, street or block, and the restrictive requirements
have been generally enforced, or accepted and complied with by
purchasers.' "

Defendants rely on *Klug v Kreisch,* 246 Mich 14, 18; 224 NW 339
(1929), and *Lemmon v Wineland,* 255 Mich 90; 237 NW 527 (1931), for
the proposition that deed restrictions are unenforceable when con-
demnation alone renders use of the property for residential purposes
impractical. However, in *Klug,* the widening of Woodward Avenue
was not the only factor involved. " 'The widening of Woodward
Avenue and the action on the part of the plaintiff in creating the
business section immediately adjoining the lot in question has in my
opinion created such a condition that the plaintiff cannot equitably
enforce the present restrictions as to lot 250.' " Unlike the situation
in *Klug,* there is no business section adjoining defendants' lots. The
property adjoining defendants' lots has remained substantially resi-
dential.

In *Lemmon,* because of the size of the lot after condemnation, it
was not physically possible to erect a residence complying with all of
the building restrictions. See *Mack Outer Drive Improvement Ass'n v
Merrill,* 317 Mich 29. Defendants have not shown that it is *physically*
impossible to build residences on the land area remaining after the
condemnation.

as to render enforcement of the restrictions inequitable.[14]

We therefore reverse the decision of the Court of Appeals and remand for consideration of the issues regarding laches, waiver, and interpretation of the deed restrictions, which it found unnecessary to consider.

FITZGERALD, C.J., and KAVANAGH, WILLIAMS, COLEMAN, and RYAN, JJ., concurred with LEVIN, J.

RILEY, J., took no part in the decision of this case.

[14] While if there had been a " 'complete change in the character of the neighborhood, so as to defeat the purposes of the covenants and to render their enforcement an inequitable and unjust burden on the owner of the lots, * * * equitable relief [would] not be granted, and the plaintiff [would] be left to his remedy at law' ". *Moore v Curry,* 176 Mich 456, 463; 142 NW 839 (1913), quoting 3 Pomeroy's Equity Jurisprudence (3d ed), p 2596. This is not such a case.