## NERRERTER *v.* LITTLE.

1. COVENANTS—BUILDING RESTRICTIONS—OMISSION FROM DEED—NOTICE.

Restriction limiting use of lots to residence purposes appearing of record in deeds for other lots in subdivision, and character of neighborhood and houses built in strict conformity therewith, *held*, sufficient notice to vendee of existence of said restriction, although it was inadvertently omitted from deed to vendor's grantors, and was also omitted from deed to vendor.

On restrictive covenants as to use of property as negative easements, see annotation in 37 L. R. A. (N. S.) 36.

On community residence as violation of restrictive covenant, see annotation in 41 L. R. A. (N. S.) 616.

2. SAME—RECIPROCAL NEGATIVE EASEMENTS.

    Where lots in subdivision were sold under general plan and in accordance with building restrictions that were strictly followed, reciprocal negative easement was created which is binding on present owners, although restriction was inadvertently omitted from deed to their grantors.

3. SAME—RESTRICTION TO DWELLING HOUSE.

    Restriction limiting construction of building on premises to dwelling house means building designed as single dwelling to be used by one family.

4. SAME—EXTENT OF RESTRICTION.

    Restriction goes to use of premises as well as to character of building.

5. SAME—BOARDING AND ROOMING CHILDREN VIOLATES DWELLING HOUSE RESTRICTION.

    Gathering together of large number of children into one group by person who makes it business to board and room them for pay is distinct violation of restriction limiting use of premises to dwelling house purposes.

Appeal from Wayne; Gilbert (Parm C.), J., presiding. Submitted April 7, 1932. (Docket No. 45, Calendar No. 36,368.) Decided June 6, 1932.

Bill by George Nerrerter and another against Eleanor C. Little and another to enjoin violation of a building restriction. Decree for defendants. Plaintiffs appeal. Reversed.

*Ralph S. Moore* (*Harry Holden MacCord,* of counsel), for plaintiffs.

*Wallace C. Hall,* for defendants.

BUTZEL, J. Contracts for the sale of lots fronting on Lawrence avenue between Hamilton avenue and 12th street, Detroit, contained restrictive covenants providing that nothing but a dwelling house or a duplex dwelling house might be built on the lots.

All buildings were erected in conformity with the restrictions, except on a few lots at the corner of business streets. A two-story dwelling house was built on the two lots involved in the instant case. The contract and deed to James W. Parker and wife, grantors of defendant Eleanor C. Little, who purchased the property, contained the restriction. The deed, however, was lost, and through an oversight the restriction was omitted from a new deed given in substitution for the one lost. The deed from the Parkers to Mrs. Little did not contain the restriction. Mrs. Little did not testify in the case, but we are fully satisfied that the restrictions appearing of record in deeds for other lots in the subdivision, and the character of the neighborhood and the houses built in strict conformity with the restrictions, were sufficient notice of the existence of the restriction. Mrs. Little sold the property to defendant Beatryce W. Hamilton on land contract. The latter knew of the pendency of the instant suit at the time the contract was executed. Mrs. Little first leased the house to Mrs. Hamilton, who was engaged in the very commendable occupation of boarding and rooming children of parents who had separated. She had obtained a license from the welfare department of the State of Michigan, and was authorized to take care of 10 children. She had at one time conducted a school on the premises, and had as many as 18 pupils. The children, however, now are taken to a school in a different neighborhood, but they are otherwise cared for in the Lawrence avenue home, where the back yard is used as a playground.

In the summer of 1929, Mrs. Hamilton conducted a summer school on the premises and looked after 15 children. Ten children, whom she boarded at

the time of the hearing, ranged from two to nine years in age. They slept on a sleeping porch that immediately adjoins the home of George and Helen Nerrerter, plaintiffs and appellants herein. The latter filed a bill to enjoin the use of the property in the manner indicated, and claimed that it violated the restrictions. They showed that they and others had been very much disturbed by the noises of the children. Some 35 owners of property in the immediate neighborhood had made an ineffective effort to stop the school through the public authorities prior to the filing of the bill. We need not consider either the damages caused or the good work carried on by Mrs. Hamilton. The sole questions are whether the property is restricted, and whether the business or occupation of boarding and rooming a large number of children in the manner indicated is a violation of the restrictions. The trial judge denied relief to plaintiffs and dismissed the bill.

The testimony is uncontradicted that the lots on Lawrence avenue between 12th street and Hamilton avenue were sold under a·general plan and in accordance with building restrictions that were strictly followed. A reciprocal negative easement was thus established which was binding upon defendants. *Allen* v. *City of Detroit,* 167 Mich. 464 (36 L. R. A. [N. S.] 890); *Sanborn* v. *McLean,* 233 Mich. 227 (60 A. L. R. 1212); *Oakman* v. *Marino,* 241 Mich. 591; *Kiskadden* v. *Berman,* 244 Mich. 473; *Austin* v. *Van Horn,* 245 Mich. 344; *Boston-Edison Protective Ass'n* v. *Goodlove,* 248 Mich. 625.

A restriction limiting the construction of a building on premises to a dwelling house means a building designed as a single˚dwelling to be used by one family. *Harris* v. *Roraback,* 137 Mich. 292 (109 Am. St. Rep. 681); *Bagnall* v. *Young,* 151 Mich. 69;

*Schadt* v. *Brill*, 173 Mich. 647 (45 L. R. A. [N. S.] 726). The property itself is in a high class neighborhood, wholly residential in character. The restriction goes to the use of the premises as well as the character of the building. In *Dingeman* v. *Boerth's Estate*, 239 Mich. 234, we said:

"Could a lot owner erect a large single residence on his lot and then turn it into a hotel or boarding house, and still claim to be using it for residence purposes? It seems to me obvious that such a use would violate the clear intent and purpose of the whole plan of development. Eating is one of the incidents of 'residing' on a lot, as well as 'rooming' or sleeping on the premises. If one may conduct a business of renting rooms for hire and be within the restrictions, then one should also be entitled to conduct the business of renting rooms and serving meals (a hotel or boarding house); or the business of serving meals alone (a restaurant). But either use, in my opinion, would be conducting a business, and, consequently, a violation of the restriction.

"So, too, running a rooming house or lodging house is clearly a business venture and contrary to the intent and purpose of the restrictive covenants."

In *Holderness* v. *Central States Finance Corp.*, 241 Mich. 604, we said:

"The provision (referring to a restriction for dwelling house purposes only) must be held to be a restriction controlling the use, as well as the character of building to be erected. Any other construction deprives the provision of all beneficial force and would be a mere evasion."

The gathering together of a large number of children into one group by a person who makes it a business to board and room them for pay is a dis-

tinct violation of the restriction. It comes within the same rule as set forth in *Hartwig* v. *Grace Hospital,* 198 Mich. 725, where we held that a nurses' home was not a residence within the meaning of the restriction clause; and in *Dingeman* v. *Boerth's Estate, supra,* where we held the restriction prevented the turning of the property into a hotel, boarding house, rooming or lodging house; and in *Seeley* v. *Phi Sigma Delta House Corp.,* 245 Mich. 252, where we held that a college fraternity house could not be erected on land, the use of which was limited to one single private dwelling house.

The decree of the lower court dismissing the bill is reversed, and decree will be entered in favor of plaintiffs in accordance with this opinion, with costs to plaintiffs.

CLARK, C. J., and MCDONALD, POTTER, SHARPE, NORTH, FEAD, and WIEST, JJ., concurred.