SCOTT v. ARMSTRONG.

1. COVENANTS—CHANGELESSNESS OF SUBDIVISION—VALUE.

Owners and purchasers, as covenantees of land protected for residential use by reciprocal easements, should be able to rely on the fact that the character of a subdivision will remain unchanged, as the restriction constitutes an important increment in the value of their property and the enjoyment of the use thereof.

2. SAME—VIOLATIONS OF RESTRICTIONS ELSEWHERE IN SUBDIVISION.

Plaintiffs in a 40-year-old subdivision wherein lots are restricted to residential use are protected in the enjoyment of such reciprocal easement, where defendants who purchased lot within last 2 years seek to use lot for commercial purposes contrary to the restrictions, notwithstanding all lots in the subdivision facing another street have been used for commercial purposes for many years, and a few minor violations have occurred elsewhere in the subdivision including some on lots facing same street as defendant's lots.

3. SAME—COMMERCIAL USE OF PROPERTY IN RESIDENTIAL SUBDIVISION.

The presence of the rear of nonconforming buildings used for commercial purposes in a subdivision restricted to residential uses together with increased noise, dirt and congestion of vehicular traffic would destroy much of the privacy and value of residential property separated therefrom by an alley to which the lots abut.

4. SAME—VIOLATIONS.

Occurrence of 5 violations of restrictions as to residential use in the 90 interior lots of subdivision which have not resulted

REFERENCES FOR POINTS IN HEADNOTES

[2–6] 14 Am Jur, Covenants, Conditions and Restrictions, §§ 295–298, 302 et seq.

[2–6] Acquiescence by purchaser of lot in restricted district in violations of restrictions as to some lots as waiver of right to insist upon it as to others. 46 ALR 372; 85 ALR 936.

Change of neighborhood in restricted district as affecting restrictive covenant. 54 ALR 812; 85 ALR 985; 103 ALR 734.

in a subversion of the original scheme of development so as to effect a substantial, if not entire, change in the neighborhood will not preclude equitable enforcement of the restrictions.

5. SAME—OCCASIONAL AND REMOTE VIOLATION OF RESTRICTIONS.
  Occasional violation of a restriction in a more remote portion of a subdivision does not preclude one from complaining of a nearer violation which threatens with direct financial injury.

6. SAME—NONSTRUCTURAL COMMERCIAL USE OF LOT RESTRICTED TO RESIDENTIAL USE—ENFORCEMENT OF RESTRICTIONS—PLUMBING BUSINESS.
  Use of lots on a street in a subdivision, restricted to residential uses, for commercial purposes that did not require the erection of buildings, would not preclude owners of lots across alley at rear from enforcing covenant against erection of structure to be devoted to housing defendant's plumbing business.

BOYLES, NORTH, and DETHMERS, JJ., dissenting.

Appeal from Wayne; Miller (Guy A.), J. Submitted January 11, 1951. (Docket No. 57, Calendar No. 44,998.) Decided May 14, 1951.

Bill by John W. Scott and others against Joseph Armstrong and wife to restrain nonresidential use of building lot. Decree for plaintiffs. Defendants appeal. Affirmed.

*Fitzgerald, Walker, Conley & Hopping (Peter L. LaDuke, of counsel), for plaintiffs.*

*Schmalzriedt, Frye, Granse & Frye, for defendants.*

BOYLES, J. (*dissenting*). This is an appeal by the defendants from a decree enjoining them from using lot 15 fronting on Schaefer road in Wallace Brothers subdivision in Detroit, for nonresidential purposes. Defendant Joseph Armstrong is a plumber, and in 1946 defendants acquired said lot on which to erect a

building for use in his business. It has a frontage of 50 feet on Schaefer road and a depth of 181 feet. When Wallace Brothers subdivision was platted in 1911 this lot, together with all others in the subdivision, including those fronting on Schaefer road as well as the lots on Grand River avenue, were restricted to residential use. The subdivision extends 1 block north on Schaefer road starting at Grand River avenue. It lies north of Grand River avenue and east of Schaefer road, with 2 interior streets and 2 alleys running north and south. It has 125 lots in all, with 16 fronting on Schaefer road and 19 fronting on Grand River avenue. Lot 1, at the intersection of Grand River avenue and Schaefer road, while platted as fronting on Grand River avenue, has a much larger frontage on Schaefer road.

Only 1 residential dwelling has ever been erected on the 16 lots fronting on Schaefer road. This is on lot 17, was built 20 to 25 years ago, and is currently occupied by Mr. and Mrs. Dick, 2 of the plaintiffs in the case, as vendees in a land contract. The other lots on Schaefer road are either vacant or used for nonresidential purposes, as will be explained later in more detail. In 1944, about 18 months before defendants acquired lot 15, the zoning ordinance of Detroit was amended to permit the use of those lots in the subdivision fronting on Schaefer road, as well as those fronting on Grand River, for business purposes. In 1948, defendants were granted a building permit by the city to erect a 1- or 2-story brick and concrete store building on their lot 15. It was to have a show window in front to display plumbing and heating fixtures, and defendants built a wire-fence enclosure on the rear of the lot for storage of pipe. The present suit followed, resulting in defendants being restrained from such nonresidential use, as hereinbefore indicated.

George and Cora Dick, the only plaintiffs who reside in the subdivision on the lots fronting on Schaefer road, declined to appear at the trial of the case and informed defendant Joseph Armstrong that they had signed the bill of complaint to keep friends and did not care how the case was decided. The other plaintiffs reside in other parts of the subdivision on lots fronting on other streets. The lots east of those fronting on Schaefer road are separated from those on Schaefer road by an alley. The lots fronting on Grand River avenue have been built up for years and used for business purposes, in violation of the original restriction in the 1911 plat. Such use has been acquiesced in by the plaintiffs and never contested by any of the owners in the subdivision.

Besides the residence of the Dicks, on lot 17, the lots in the subdivision fronting on Schaefer road have either been made use of for nonresidential purposes or have remained vacant. Any such violation of the restriction has not been contested until the present litigation. Lot 16, north of defendants' lot 15, is vacant. Lot 17 is occupied by the Dicks, and so far as shown by the record the next 5 lots are vacant. However, the north corner lots, 23 and 24, at the north end of the block have occasionally been used for truck storage and as a parking place for trucks and trailers for upwards of 2 years. The only objection made was that such use was contrary to the zoning ordinance. Lots 9 and 10, south of defendants' lot and fronting on Schaefer road, are covered with hard surface and have been used for automobile parking for 10 or 12 years, without complaint. Also fronting on Schaefer road, on lot 1 of the subdivision, is a building that has been in use for a garage, automobile repairs and body bumping for 12 to 15 years, without protest.

Since the restriction was imposed in 1911, Schaefer road has become an industrial highway and one of

the main north and south thoroughfares in West Detroit. Between the Ford Motor Company to the south and many plants in the north, it has heavy motor traffic. It is used by the DSR buses, which use a terminal and storage building 2 blocks north. The frontage on Schaefer road west of and directly across the street from Wallace Brothers subdivision is largely used for commercial purposes. The same is true of many lots on Schaefer road north of the subdivision. The record also shows that besides the nonresidential use of those lots in the subdivision which front on Schaefer road and on Grand River avenue, other violations of the original nonresidential restriction have occurred in the subdivision. No attempt to enforce the restriction as to these violations was made by the plaintiffs or other residents in the subdivision so far as shown by the record, at least until after the instant case was started. There was evidence of nonresidential use of lot 52 (truck parking and gasoline pump), lot 56 (chicken coop), lot 123 (a welding and truck repair shop), lot 36 (for rewinding electric motors), and lot 125 on which was located a building, for storing building materials and construction equipment for at least 20 years.

Plaintiffs admit that the original restriction has been violated for years by the use of lots fronting on Grand River avenue, and on Schaefer road. The 1911 covenant not only restricted the use of the lots to residence buildings, barns and outbuildings "ordinarily connected therewith," but also covenanted that "said premises shall not be used for any purpose except for residence."

Most of the fundamental principles governing restriction cases have been well settled by our decisions.

"These building restriction cases present such wide difference in facts that, in equity, but few rules can

be applied generally. In the main, each case must be determined on its own facts." *Putnam* v. *Ernst,* 232 Mich 682.

"Courts of equity in passing upon cases of this character grant or withhold injunctive relief depending upon the accomplishment of an equitable result in the light of all of the circumstances surrounding the particular case." *Cherry* v. *Board of Home Missions of Reformed Church in United States,* 254 Mich 496.

"As has been frequently stated, decisions in restriction cases depend entirely upon the facts in each particular case." *Taylor Avenue Improvement Ass'n* v. *Detroit Trust Co.,* 283 Mich 304.

"In deciding cases involving restrictive covenants, we have announced and observed various rules. One is that the cases present such wide difference in facts that, in equity, but few rules can be universally or even generally applied. In the main, each case must be determined on its own facts." *Carey* v. *Lauhoff,* 301 Mich 168.

"Restrictions in deeds will be construed strictly against the grantors and those claiming to enforce them, and all doubts resolved in favor of the free use of the property." *James* v. *Irvine,* 141 Mich 376, repeated in *Wood* v. *Blancke,* 304 Mich 283.

It should be noted that in the nebulous field where disputes over the enforcement of negative restrictive covenants are generally found, borderline decisions generally result. As said by Mr. Justice WIEST in *Hamburger* v. *Kramp,* 268 Mich 611, quoted with apparent approval in *Boston-Edison Protective Association* v. *Paulist Fathers, Inc.,* 306 Mich 253 (148 ALR 364):

"Building restriction cases are governed by particular facts and it is neither possible nor desirable

to establish a measuring stick and thereafter cut cases to fit for that would be too Procrustean."

There are many decisions which support the conclusion that minor, incidental, temporary or occasional violations will not be held to necessarily constitute a waiver of the right of property owners to enjoin a violation which threatens them with direct substantial injury. In the case at bar we consider the placing of a chicken coop on lot 56, the parking of a dump truck and use of a gasoline pump on lot 52, the operation of a private (personal) truck repair shop on lot 123, private rewinding of motors on lot 36, the small building on lot 125 used to store building material, the occasional parking of trucks on lots 24 and 25, do not in themselves necessarily require that we should find that plaintiffs are estopped from enforcing the restriction. For precedents, see *De Galan* v. *Barak,* 223 Mich 378; *Wilcox* v. *Mueller,* 250 Mich 167; *Polk Manor Co.* v. *Manton,* 274 Mich 539; *Woughter* v. *Van Marter,* 281 Mich 408; *Michiana Shores Estates, Inc.,* v. *Robbins,* 290 Mich 384.

Nor does the mere fact that this subdivision is now largely surrounded on 3 sides outside the subdivision by business and commercial use, particularly as applied to the lots on Schaefer road, in itself furnish a necessary ground for denying plaintiffs the right to enforce the restriction. *Misch* v. *Lehman,* 178 Mich 225; *Bohm* v. *Silberstein,* 220 Mich 278; *Boston-Edison Protective Ass'n* v. *Goodlove,* 248 Mich 625; *Golden* v. *Davis,* 266 Mich 7; *Spence* v. *Kuznia,* 307 Mich 219; *Mack Outer Drive Improvement Association* v. *Merrill,* 317 Mich 24. But equity may grant relief where a breach of a restriction has not resulted in subversion of the original scheme of development or in a substantial change of neighborhood, when it is shown that lot owners will be seriously damaged

by the violation. *Voorheis* v. *Powell,* 261 Mich 378 (85 ALR 932).

While the change in the zoning ordinance in 1944, allowing use of the lots facing Schaefer road for nonresidential purposes, cannot operate to destroy the contractual obligations involved in the restrictions (*Phillips* v. *Lawler,* 259 Mich 567), such change is of importance in considering whether there has been such a change of circumstances as to the lots on Schaefer road that an equity court will not enforce the restriction. *Sandenburgh* v. *Michigamme Oil Co.,* 249 Mich 372.

When Wallace Brothers subdivision was platted in 1911 and the restriction imposed, Schaefer road was an unpaved dirt road known as Monier road, later called Coolidge highway, now changed to Schaefer road. During the intervening 40 years it has become a main paved-trunkline highway, at one time with double-track streetcar line, now replaced by DSR buses which travel the road regularly. It is regularly used by ambulances and police cars. The lots in the subdivision fronting on Grand River avenue have been used for store and business purposes for many years, in violation of the early restriction, without objection. Some of the lots facing Schaefer road have for years been used for nonresidential purposes, without objection. The testimony preponderates that the lots on Schaefer road are no longer useful for residential purposes, and have no market if restricted to residential use. These lots, 181 feet in depth, are separated by an alley from the lots east of them in the subdivision which front east on Hartwell avenue. One of the main yardsticks used in many cases to measure the equities in determining whether a residential-use restriction should be enforced by the equity court is whether the plaintiffs who seek enforcement will be injured by nonenforcement. In the instant case,

there is no testimony of any substantial probative
force to show that the lots in the subdivision east of
Schaefer road will suffer any appreciable injury
for residence purposes. In weighing the equities as
applied to the circumstances of the case at bar, we
conclude that the restriction against the use of de-
fendants' lot 15 fronting on Schaefer road for non-
residential purposes is no longer of any material
value to the owners of other lots in the subdivision.
The enforcement of the restriction as to lot 15 would
now prevent any effective use being made of said lot.
In that connection the plaintiffs who might be in the
best position to complain are the Scotts who, how-
ever, have lived in the subdivision 14 years and have
never sought to enforce the restriction, unless under
the zoning ordinance; and the Dicks who are not in-
terested, and who concede that the only valuable
use of lot 15 must be nonresidential.

We conclude that under the combination of circum-
stances of the case, the failure of plaintiffs to enforce
the restriction despite the previous violations, the
fact that the municipal authorities by amending the
zoning ordinance obviously consider the lots on
Schaefer road as proper for business purposes, the
dearth of proof that plaintiffs will be injured by non-
residential use of those lots, and the change in charac-
ter of the neighborhood particularly affecting these
lots, outweigh the desire of plaintiffs that the re-
striction be enforced as to lot 15.

"The right and duty of a chancery court to enforce
restrictions in a deed under its equitable jurisdiction
is not absolute, but in the exercise of such jurisdic-
tion the same general equitable considerations and
rules are recognized as move the court in cases for
specific performance of contracts.

"The equity court will not enforce the provisions
in a deed restricting the use of the premises to resi-
dential purposes, where, since the dedication of the

plat, the character of the locality has changed from a residential to a business section, and adjoining lots, originally containing the same restrictions, have been freed therefrom, and are now used for business purposes." *Windemere-Grand Improvement & Protective Ass'n* v. *American State Bank of Highland Park* (syllabi), 205 Mich 539.

See, also, *Harrigan* v. *Mulcare,* 313 Mich 594.

"In a suit to enjoin the violation of building restrictions, the finding of the court below that there had been such a subversion of the plan of development provided for in the restrictive clauses in the deeds, with the express or implied assent of the owners of all of the lots in the blocks involved, as resulted in an entire change of purpose of the use to which the lots should be put, and that it would be inequitable to the present owners to enforce said restrictions at this time, *held,* justified by the record." *Frigo* v. *Janek* (syllabus), 237 Mich 642.

The case should be reversed for entry of decree for defendants, with costs.

North and Dethmers, JJ., concurred with Boyles, J.

Butzel, J. Justice Boyles, in his opinion, considered the desirability of the use of the Schaefer lots for nonresidential purposes, the change in the character of the subdivision, the absence of a showing of damage on the part of the plaintiffs, and the large number of existing violations, and concluded that it would be inequitable to enforce the restrictions. We cannot agree that there has been a waiver of the restrictions, that the plaintiffs would not be damaged if the restrictions were set aside, or that the violations of the restrictions on Grand River avenue, and other minor violations have sufficiently changed the character of the subdivision.

In the past, the primary and controlling issue in cases of this type has been the interest of the covenantees and we believe that Justice Boyles has given insufficient weight to this facet of the problem. Owners and purchasers, as covenantees of land protected by reciprocal easements, should be able to rely on the fact that the character of a subdivision will remain unchanged. The restriction constitutes an important increment in the value of their property and the enjoyment of the use thereof. In contrast, the defendants bought their lot with notice of the restrictions and subject to them, only 2 years prior to the institution of this suit. If the restrictions were so burdensome as to make the land of less value, it can be presumed that the factor was considered in arriving at the price at which the burdened land was sold. As between the parties, it is clearly the covenantees who should be protected. We have not considered the interests of the public, for the public is not involved. We quote from *Spence* v. *Kuznia,* 307 Mich 219, 223:

"The fact that Saginaw street is now more suitable for commercial purposes does not nullify the restrictions. The question before us is as to the property rights of the plaintiffs, and not as to what might seem to be a more advantageous use of the property in the subdivision on Saginaw street."

See, also, *Bohm* v. *Silberstein,* 220 Mich 278.

Of the 16 lots facing Schaefer road, 11 are unoccupied, 2 have been intermittently used for the parking of trucks, 2 are used regularly for noncommercial parking, and 1 has a home upon it. On the rear of lot 1, which is platted as a Grand River lot, but with a large frontage on Schaefer road, there is a small 1-story garage-like structure facing Schaefer road. It is used as a brake repair service. These 16 lots on Schaefer are separated by an alley from the rear of

18 lots which front on Hartwell avenue, the first street east of Schaefer road. The owners of 8 of these 18 lots are plaintiffs. It is obvious that if we find it inequitable to enforce the restriction as to lot 15, it would also be inequitable to enforce the restrictions as to the other 15 lots facing on Schaefer road. It is also evident that setting aside the restrictions would lower the value of the plaintiffs' properties.

"The rear of such nonconforming structures would be immediately opposite the conforming homes and the owners thereof would have much of their privacy destroyed thereby. From the side of their homes or even from diagonally across the street, the outlook would be upon the unsightly rear of the nonconforming building. Owners nearby would be inconvenienced by the noise, dirt, and congestion of vehicular traffic along the side or in the rear of the nonconforming property." *Taylor Avenue Improvement Ass'n* v. *Detroit Trust Co.,* 283 Mich 304, 310.

Nor can we say that there has been a waiver of the restrictions, or a change in character in the subdivision. It is claimed that there were 5 violations in the 90 interior lots in the subdivision. In *Misch v. Lehman,* 178 Mich 225, 228, we said:

"The true rule seems to be that, even after 1 or more breaches, equity will grant relief if the restriction can be shown to be of value to complainant, and such breaches have not resulted in a subversion of the original scheme of development resulting in a substantial, if not entire, change in the neighborhood." (Citing cases.)

None of the 5 violations were of a serious nature, and there was no evidence that the violations "resulted in a subversion of the original scheme of the development." In *Carey* v. *Lauhoff,* 301 Mich 168, we did not find a waiver in 23 violations of a residential subdivision composed of 189 lots, for

no substantial change in the character of the neighborhood was found. The Court applied the rule of *Misch* v. *Lehman, supra.* See, also, *Voorheis* v. *Powell,* 261 Mich 378 (85 ALR 932). The trial judge in the instant case examined the premises and found that it was a "very handsome subdivision."

The 19 lots on Grand River are separated by an alley from the residential portion of the subdivision. This alley borders on only 5 of the 90 interior lots in the subdivision. As to 1 plaintiff, the violations on Grand River are 850 feet distant, although his property is in the rear of the Schaefer road alley. Another plaintiff owns property 950 feet from Grand River. With 1 exception, none of the plaintiffs own lots which border the Grand River avenue lots of the subdivision.

In *Spence* v. *Kuznia, supra,* we held that violations of the restrictions, when not in the immediate vicinity of the plaintiff's lot, will not constitute a waiver.

"Violations in other blocks and on other streets did not require plaintiffs to run to court to prevent them or, for failure to do so, remain supine when other and nearer violations of the restrictions threatened them with direct financial injury." *De Galan* v. *Barak,* 223 Mich 378, 382.

In *Farley* v. *Finn,* 226 Mich 205, we said:

"This Court has several times held in the last few years that failure of an owner in restricted territory to take action for prevention of violations in other blocks or on other streets in the restricted district does not necessarily deprive him of the right of enforcing the restrictions when a violation is attempted in proximity to his property which would especially and directly be injurious to him." (Citing cases.)

Finally, there are the lots on Schaefer itself. Lots 23 and 24 have been used for intermittent truck park-

ing, and lots 9 and 10 have been used regularly for noncommercial parking. These violations involve no structures, and it is evident that this use of the lots is in no way comparable to the erection of business buildings and the carrying on of permanent business thereon. *Polk Manor Co.* v. *Manton,* 274 Mich 539; *Carey* v. *Lauhoff,* 301 Mich 168; *Boston-Edison Protective Ass'n* v. *Goodlove,* 248 Mich 625.

The trial judge heard the testimony, examined the exhibits and visited the premises. He said:

"I think it is undoubted that the property on Schaefer avenue would sell for more if the restrictions were to be abrogated as to Schaefer avenue, but I do not think it can be said affirmatively that the restrictions are no longer of value to the owners on Littlefield and Hartwell. There are 20 lots and 17 or 18 houses on Hartwell whose back yards are just across the alley from Schaefer, and their property would be directly and seriously damaged by a use for commercial purposes on Schaefer. The houses on the east side of Hartwell would front toward the back elevation of buildings, which under the city zoning ordinance would come into play immediately upon a determination that the restrictions no longer held good for Schaefer avenue frontage, might be built to a height of 35 feet.  *  *  *

"A decree denying a remedy to lot owners in this very handsome subdivision as it has been improved, would be something that would, in my judgment, unwarrantably deny to them proper protection for their lots under contract restriction."

The decree of the trial court giving plaintiffs injunctive relief is affirmed, with costs to appellees.

REID, C. J., and CARR, BUSHNELL, and SHARPE, JJ., concurred with BUTZEL, J.