**Helen A. BERRY, Appellant,**

v.

**Gene HEMLEPP et al., Appellees.**

Court of Appeals of Kentucky.

May 22, 1970.

As Modified on Denial of Rehearing
Dec. 18, 1970.

John M. Williams, Gray, Woods & Cooper, Ashland, for appellant.

James P. Stavros, Diederich, Hermansdorfer & Wilson, Ashland, for appellees.

CLAY, Commissioner.

This is a suit by appellees, neighboring property owners, to enjoin the operation of a child-care enterprise by appellant on her residential lot in alleged violation of deed restrictions. The Chancellor granted the injunction prayed.

The residential properties are located on Nancy Court, a subdivision street in Ashland. The pertinent restrictive covenants on the lot are:

"(1) All lots in Gartrell Realty Company subdivision, Block #30, *shall be known and used as residential lots.*

"(2) No structures shall be erected, altered, placed or permitted to remain on any *residential building plot other than one detached single-family dwelling* not to exceed two stories in height and a private garage for not more than two cars.

\*   \*   \*   \*   \*   \*

"(5) No noxious or offensive trade or activity shall be carried on upon any *lot* nor shall anything be done thereon which may be or *become an annoyance to the neighborhood.*" (Emphasis added)

Prior to her husband's death in 1968 appellant had cared for the children of others at her residence. After his death this child-care avocation was converted into what must be characterized as a business. Appellant listed her home in the telephone directory under the name of "Helen Berry Day Care Center". She secured a business license from the City of Ashland and a license from the State Department of Child Welfare. She obtained from the Ashland Board of Zoning Adjustment a special exception to the zoning code permitting her to build an additional room and bath on the house to handle the children she kept daily. She employed a full-time worker. The number of children normally cared for six days a week ranged between 15 and 25.

In brief the parties debate whether the restrictive covenants are ambiguous or unambiguous; whether they should be liberally construed to allow free use of property or strictly construed to protect the neighbors; and whether they actually relate to the use of the property or the type of structure. We are referred to the cases of Hol-

liday v. Sphar, 262 Ky. 45, 89 S.W.2d 327 (1936); Glenmore Distilleries Co. v. Fiorella, 273 Ky. 549, 117 S.W.2d 173 (1938); Dorsey v. Fishermen's Wharf Realty Co., 306 Ky. 445, 207 S.W.2d 565 (1948); Connor v. Clemons, 308 Ky. 9, 213 S.W.2d 438 (1948); Macy v. Wormald, Ky., 329 S.W.2d 212, 213 (1959); and Gates v. Strube, Ky., 415 S.W.2d 852 (1967). We have again examined them.

It does not appear necessary to become too deeply immersed in legal refinements and subtle meanings of words or omissions. The first covenant clearly designates these lots as residential lots which "shall" be used for that purpose. The second covenant fortifies this restriction by prohibiting any other structures on a lot except one single-family dwelling (and garage). The fifth covenant emphasizes their residential character by prohibiting any activities which may become an annoyance to the neighborhood.

As did the Chancellor, we find no ambiguity in the basic restrictions on these lots. This was a residential subdivision developed for that purpose. The objective of the covenants was clearly to restrict the use of these lots to residential use. To provide that they "shall" be so used as to exclude other uses. Exclusionary adjectives or adverbs were not here required. All that is needed in the present case is a fair and common-sense approach to the objective sought by the language used. The fact that appellant also resides in the house is irrelevant to the question of whether it is utilized for a nonresidential purpose.

We are confronted with a foreign case wherein a different conclusion was reached on very similar facts. Shoaf v. Bland, 208 Ga. 709, 69 S.E.2d 258 (1952). The first of the restrictive covenants therein considered provided the property should be used solely as a residential lot. The deed also contained the identical restriction (5) which we have quoted above, prohibiting noxious or offensive trade or activity, etc.[1] The Georgia Supreme Court decided that this additional restriction altered the effect of the very positive first restriction and it was held that a property owner could operate a kindergarten in her residence. The rationale of the court was that the later restriction must be given some effect because there was no reason to forbid other activities if the original restriction excluded them. Up to a point we concur in this conclusion. We cannot concur in the determination that unnecessary or additional restrictions should be interpreted to emasculate the clearly expressed basic one.

Perhaps it was unnecessary for the grantor to exclude noxious or offensive *trades*. However, some trades could be compatible with residential use and this precautionary restriction could be given an effect not inconsistent with the basic residential one. To say that such *prohibition* thereby *creates a permissive use* forbidden by the latter is to distort the obviously intended objective. Prohibiting noxious or offensive *activities* fits consistently with the restriction to residential use and does not militate against such restriction. We respectfully decline to follow the reasoning of the Georgia Supreme Court in the above case.

In Sumerlin v. Cox, Tex.Civ.App., 344 S.W.2d 742 (1961), the Texas Court of Civil Appeals, confronted with the identical additional restriction, would not construe it as so modifying the basic residential restriction as to permit the giving of music lessons in a residence. Subsequently this same court confirmed its view that the additional restriction relating to "offensive trade or activity" did not authorize a business use of the premises, even if inoffensive. Davis v. Hinton, Texas, 374 S.W.2d 723 (1964). It is true the court in that case, on the issue of waiver of the restriction, did say that a "day nursery" was a "merely incidental" residential use, but the evidence

---

1. We do not know the source of this particular restriction but it appears to be a common one, not only appearing in the present case and the Georgia case but also in Sumerlin v. Cox, Tex.Civ.App., 344 S.W.2d 742 (1961).

did not reveal the extent of this activity. In addition, the court held there was another ground upon which the "day nursery" use did not constitute a waiver of the restriction. Attention is also called to Moore v. Stevens, 90 Fla. 879, 106 So. 901 (1925), wherein it was held that a residential restriction prohibited the giving of singing lessons in a home.

Though the operation of a kindergarten or a child-care center or the giving of music and singing lessons is a commendable social activity, we are confronted with the opposing legal property rights of others. To dilute a positive residential restriction by condoning socially desirable violations is to impair those rights and create an unwarranted uncertainty in the law. There is a reason for such restrictions, the objective is clear, and other property owners rely on them. It is only fair to require their observance.

The Chancellor also found that appellant's child-care center was in a sense an offensive activity (in violation of restriction (5)), but we do not believe such finding was necessary to support the conclusion that appellant was violating the restrictive covenants of her deed.

The judgment is affirmed.

EDWARD P. HILL, Jr., C. J., and MILLIKEN, OSBORNE, PALMORE, REED and STEINFELD, JJ., concur.

NEIKIRK, J., not sitting.