BEVERLY ISLAND ASSOCIATION v ZINGER

Docket No. 53451. Submitted November 10, 1981, at Detroit.—Decided February 17, 1982.

The Beverly Island Association, a homeowners association, brought an action against William and Jeanette Zinger, seeking to enjoin Mrs. Zinger from engaging in child care activities. Mrs. Zinger operated a licensed family day care home, caring for up to seven children during the daytime hours. The association alleged that this activity violated a restrictive covenant in the deeds to property in the subdivision which stated that no lot shall be used except for residential purposes. The Oakland Circuit Court, John N. O'Brien, J., enjoined the defendants from operation of the day care home at their premises. The defendants appeal, alleging that the operation of a family day care home does not violate the restrictive covenant and that the trial court erred in ruling that the plaintiff should not be estopped from bringing the action. *Held:*

1. The focus in a case involving a covenant restricting the use of property to residential purposes is on the activity involved and on how it parallels the ordinary and common meaning of use for residential purposes. In this case the activities involved are residential in nature.

2. The public policy of the state favors the operation of family day care homes. Balancing this public policy, the obtrusiveness of the activities involved in this case, and the legal meaning of the language of the restrictive covenant, it is concluded that the defendants were using their property for residential purposes when caring for the children. The trial court erred in issuing the injunction.

3. It is unnecessary to decide the matter of whether the plaintiff was estopped from bringing the action.

Reversed.

REFERENCES FOR POINTS IN HEADNOTES

[1] 20 Am Jur 2d, Covenants, Conditions, and Restrictions § 187.
[2] 20 Am Jur 2d, Covenants, Conditions, and Restrictions § 185.
[3] 20 Am Jur 2d, Covenants, Conditions, and Restrictions § 196.
[4] [No reference]

1. COVENANTS — DEEDS — RESTRICTIVE COVENANTS.

> Building and use restrictions in residential deeds are favored by public policy; however, restrictive covenants in deeds are construed strictly against grantors and those claiming the right to enforce them and all doubts are to be resolved in favor of the free use of property.

2. COVENANTS — RESTRICTIVE COVENANTS.

> Cases involving the interpretation of restrictive covenants uniquely depend upon the facts of each particular case.

3. COVENANTS — RESTRICTIVE COVENANTS — RESIDENTIAL USE.

> The receipt of compensation for an activity conducted in a residence may be a factor to be considered in determining whether or not the activity violates a covenant restricting use to residential purposes, but is not a controlling factor; the focus of the inquiry must be on the activity involved and on how it parallels the ordinary and common meaning of use for residential purposes.

4. STATUTES — FAMILY DAY CARE HOMES — PUBLIC POLICY.

> The public policy of Michigan seeks to provide for the protection, growth and development of children, and favors family day care homes (MCL 722.111; MSA 25.358[11]).

*Yuille, Plourde & Russell* (by *Peter M. Keenan),* for plaintiff.

*Richard Ericksen,* for defendants.

Amicus Curiae:

*Schaden & Heldman,* for the Women Lawyers Association of Michigan.

Before: R. M. MAHER, P.J., and D. F. WALSH and D. C. RILEY, JJ.

D. C. RILEY, J. Defendants appeal as of right from a judgment which permanently enjoined them from operation of a licensed family day care home in their subdivision residence. The trial court found the activities of the family day care

home were in violation of a restrictive covenant contained in all subdivision deeds.

MCL 722.111(f)(iii); MSA 25.358(11)(f)(iii) defines a family day care home as:

"a private home in which 1 but less than 7 minor children are received for care and supervision for periods of less than 24 hours a day, unattended by a parent or legal guardian, except children related to an adult member of the family by blood, marriage, or adoption. It includes a home that gives care to an unrelated minor child for more than 4 weeks during a calendar year."

The restrictive covenant at issue in this case states as follows:

"Land Use and Building Type.

"A. No lot or building plot shall be *used except for residential purposes.* No structure shall be erected, altered, placed, or permitted to remain on any lot or building plot other than one detached single family private dwelling not to exceed 2 stories in height above grade level." (Emphasis added.)

The plaintiff is the local homeowners association. It filed a complaint on August 13, 1979, seeking injunctive relief. Defendants answered, admitting that their deed contained such a restriction and that Mrs. Zinger was engaging in child care activities. Cross motions for summary judgment, pursuant to GCR 1963, 117.2(1) and (3), were filed by defendants and plaintiff respectively. The trial court granted partial summary judgment in plaintiff's favor. The court also ruled that an evidentiary hearing was necessary to determine whether plaintiff was estopped by its conduct from bringing suit. The testimony presented at that

hearing will be detailed later in this opinion as necessary. The trial court determined that plaintiff was not estopped from bringing this action. Therefore, defendants were permanently enjoined from operating a family day care home at their Beverly Island premises.

Defendants raise two issues on appeal: (I) whether the use of their home as a family day care home violates the residential use restriction in their deed; and (II) whether the trial court erred in ruling that the plaintiff should not be estopped from bringing this action. The issue of whether child care activities in a home which rise to the level of a family day care home are violative of a residential use restrictive covenant is one of first impression in Michigan.

The trial court stated in its October 15, 1979 opinion:

"While it is true that the children are cared for in the same manner as Mrs. Zinger's [three] children and participate in the same types of activities, it must be apparent to all adjacent homeowners that a day care facility is indeed being conducted upon these premises. I do not feel that it can reasonably be stated that the maintenance of these children within the Zinger residence constitutes 'family use'. Accordingly, I am satisfied on the facts presented that the alleged use of these premises is in violation of the restrictive covenants."

Building and use restrictions in residential deeds are favored by public policy. *Johnstone v Detroit, Grand Haven & Milwaukee R Co,* 245 Mich 65, 74; 222 NW 325 (1928). However, "'[r]estrictive covenants in deeds are construed strictly against grantors and those claiming the right to enforce them, and all doubts are resolved in favor of the free use of property.' *James v Irvine,* 141 Mich 376 [104

NW 631 (1905)]." *Wood v Blancke,* 304 Mich 283, 287; 8 NW2d 67 (1943).

With this rule of law before us, we note that the deed permits residential uses rather than prohibiting business or commercial uses. See Anno: *Construction and application of covenant restricting use of property to "residence" or "residential purposes",* 175 ALR 1191. In *Miller v Ettinger,* 235 Mich 527; 209 NW 568 (1926), the Court determined that the restriction in a deed that lots "shall be used solely for residence purposes" did not forbid erection of an apartment house. A restriction allowing residential uses permits a wider variety of uses than a restriction prohibiting commercial or business uses.

The covenant involved here stating that no lot shall be used except for residential purposes has not been interpreted by any Michigan appellate courts with regard to family day care homes. Restrictive covenant cases uniquely depend upon the facts of the particular case. *Scott v Armstrong,* 330 Mich 504, 509; 47 NW2d 712 (1951).

The Supreme Court stated roughly 40 years ago: "No clear and definite line can be drawn as to residential use of premises. It is a safe rule that the usual, ordinary and incidental use of property as a place of abode does not violate a covenant restricting such use to 'residence purposes only', but that an unusual and extraordinary use may constitute a violation." *Wood, supra,* 288-289. The *Wood* Court also wrote that a business or professional use may not violate a residential use covenant so long as the nonresidential use was casual, infrequent or unobtrusive and was not detrimental to the property values of neighbors.

The plaintiff contends that the fact that defendants receive compensation for taking care of the

children renders the operation a business and thereby violates the covenant. We do not find this to be the pivotal question. In *Wood,* the Court found a violation of the covenant even though the venture was purely noncommercial. In *O'Neal v Hutt,* 28 Mich App 295, 299; 184 NW2d 297 (1970), the Court determined that a psychologist could consult or meet with others for the planning or writing of books, articles or papers, which would generate income, and that that activity would not violate a residential use covenant. The receipt of compensation may be a factor to consider but its existence or absence is not controlling. Instead, the focus must be on the activity involved and how it parallels the ordinary and common meaning of use for residential purposes.

Child caring and rearing violates a residential building and use restriction when it involves boarding 10 children and conducting summer school for as many as 15. *Nerrerter v Little,* 258 Mich 462; 243 NW 25 (1932). The defendant in *Nerrerter* was licensed by the state to take care of ten children. The Court held: "The gathering together of a large number of children into one group by a person who makes it a business to board and room them for pay is a distinct violation of the restriction." *Id.,* 466-467. We agree with the *Nerrerter* Court but find the large number of children, the seven-days-a-week overnight rooming and boarding of the children, and the business aspect of that case distinguish it from this one.

The size of the group of children was also a critical factor in *Berry v Hemplepp,* 460 SW2d 352 (Ky, 1970). Neighboring property owners in *Berry* brought action against an operator of a child day care center on the basis that the center activities violated restrictive residential use covenants. Mrs.

Berry conducted a licensed child care business which was so listed in the telephone directory. She had built an additional room and bath on her house to accommodate the children she kept daily. She also employed a full-time worker. The number of children cared for 6 days a week ranged between 15 and 25. The Kentucky Court of Appeals correctly decided that Mrs. Berry was violating the covenant. The *Berry* court noted that in *Davis v Hinton*, 374 SW2d 723, 727 (Tex Civ App, 1964), the Court of Appeals tangentially decided that the operation of a day nursery did not violate a residential use covenant. *Shoaf v Bland*, 208 Ga 709; 69 SE2d 258 (1952), was also cited in *Berry*. The Georgia Supreme Court in *Shoaf* held that a trial court had not abused its discretion in denying an injunction based on a finding that operation of a kindergarten in a home did not, as a matter of law, violate a residential use covenant.

The activities involved in this case are on a much smaller and less intrusive scale than those in *Nerrerter* or *Berry*. Mrs. Zinger, by state regulation, cares for no more than seven unrelated children at a time. The preschool age children are cared for in the home and the adjoining yard, in the manner Mrs. Zinger cares for her own children. The only observable factor which would indicate to an observer that defendants do not simply have a large family is the vehicular traffic in the morning and afternoon when the children arrive and depart. When focusing on the objective activities involved in this case, we find they are residential in nature.

The trial court grounded its decision on *Bellarmine Hills Ass'n v Residential Systems Co*, 84 Mich App 554; 269 NW2d 673 (1978). That case determined that a licensed foster care facility for

four mentally retarded *children* and one foster parent constituted a "family" within the sense of the restrictive covenant involved. The *Bellarmine Hills* Court considered the public policy issues involved and stated they must be balanced with "the legal concept of 'family' ". *Id.,* 559.

*Jayno Heights Landowners Ass'n v Preston,* 85 Mich App 443; 271 NW2d 268 (1978), was also discussed by the trial court. In *Jayno,* a covenant restricting property to occupancy by a single family was held to be violated by an *adult* foster care facility. The majority of the Court stressed that the dwelling was being used for commercial purposes and that the residents were a group of six unrelated elderly individuals sharing a common roof. Judge GILLIS wrote, with Judge MAHER concurring, that:

"This Court does not believe that the public policy in favor of providing adult foster care facilities, under the facts of this case, outweighs the public policy favoring the rights of property owners to restrict the use of their property to single family dwellings occupied by single family units." *Id.,* 448.

Judge McGREGOR, dissenting in *Jayno,* believed the public policy scales tipped the other way.

The trial court concluded that *"Bellarmine* appropriately establishes the rule of law for determination of compliance with covenants restricting the use of premises to single family residential purposes". The court found the transportation of the children in and out of the subdivision compelling and the public policy not overwhelming.

Our inquiry must now focus on the public policy aspect of this case. The Women Lawyers Association of Michigan was granted leave to file an amicus curiae brief on behalf of the defendants. In

that brief the Court's attention is directed to the National Day Care Home Study, Research Report, vol II, Department of Health and Human Services publication no. (OHDS) 80-30283. The study surveyed and analyzed the care given in family day care homes. The care givers are socio-economically and culturally diverse. A composite average care giver would be a 41-year-old, married female who has completed high school.

This study also examined the cost of family day care homes and the income they produce. The average hourly fee is 50¢; the average weekly fee per child paid to the care giver is $20.85. The survey reported that day care homes provide services not readily available at a child care center. These services include flexible scheduling and care of sick children.

Of the 7.5 million American families who regularly use some form of child care for 10 or more hours a week, fully 45% place their children in family day care homes. Considering the children who require full-time care, the greatest percentage of these children are under three, and almost 50% are serviced by an estimated 1.3 million family day care homes. *Id.,* 2. The prevalence of day care homes has been documented in Michigan also. Smock, *The Children: Shapes of Child Care in Detroit,* Center for Urban Studies, Wayne State University (1976).

The Legislature also reflects public policy in favor of family day care homes. The purpose of MCL 722.111; MSA 25.358(11), under which defendants are licensed, as well as 500 other homes in Oakland County, is to protect our children. Unquestionably, the public policy of this state is to provide for the protection, growth and development of the children. The Court in *Bellarmine Hills* "noted the momentous public policy support-

ing" the treatment and care of mentally retarded children. 84 Mich App 561. The Court also weighed the benefit of care rendered in a home compared to institutionalized care. *Id.*

After considering the obtrusiveness of the activities involved here and the public policy in favor of family day care homes, we must balance these factors with the legal meaning of no use "except for residential purposes". Having done so, we are persuaded that the defendants are using their property for residential purposes when caring for the children. We are persuaded further that the extra vehicular traffic is minimally obtrusive in light of the overriding public policy in favor of day care homes. We conclude, therefore, that the trial court erred in issuing the injunction against defendants.

The defendant's second issue, claiming plaintiff is estopped from maintaining this action, need not be addressed due to our resolution of the first issue.[1]

---

[1] For a complete understanding of this case, the facts giving rise to the estoppel argument must be briefly recounted.

Defendant's neighbor, Barbara Klatz, testified that each Sunday she and her husband conduct church services in their home. Approximately 25 people attend these services which are part of a nationwide "meeting of friends". The Klatzes also use their home for business purposes. They have a business phone in the house and list their home address as the business address in the telephone book. A citizen's band (CB) radio system is also operated out of the house in connection with the business. Part of the CB system includes a 100-foot outside antenna. A bright orange van is parked in the Klatz's driveway. This van is used in the business operation and is painted with pertinent information on its side. The company van, which is too large to park in the garage, is stocked with merchandize.

The business also generates considerable paperwork which is done inside the home for several hours a day. This paperwork is then sent to the main office daily at 5 p.m. when a United Parcel Service truck arrives. The sales Mr. Klatz conducts over the phone and by use of his van is approximately $1 million a year.

Defendants also argue that the activities of other neighbors violate the restrictive covenant. The activities of the Klatzes appear to this

Reversed. No costs, a public issue being involved.

---

Court to be the most severe and demonstrate the nature of the neighborhood.