McDonald, P.J.
 

 Plaintiffs appeal as of right the circuit court’s grant of summary disposition in favor of defendants in this case. We affirm.
 

 The relevant facts are not in dispute in this case. The parties are all owners of real property in the Spring Valley Estates subdivision in Fruitport Township, Muskegon County. The subdivision is subject to several protective covenants, three of which are relevant to this appeal:
 

 1. No part of any of the premises above described may or shall be used for other than private residential purposes.
 

 3. No lot shall be used except for residential purposes.
 

 14. No part of parcel of the above-described premises shall be used for any commercial, industrial, or business enterprises nor the storing of any equipment used in any commercial or industrial enterprise.
 

 Defendants Mrs. Laurel Zwit and Mrs. Nicci Clark each operate a licensed “family day care home” in their homes pursuant to MCL 722.111; MSA
 
 *414
 
 25.358(11). The statute defines “family day care home”:
 
 [1]
 

 “Family day care home” means a private home in which 1 but fewer than 7 minor children are received for care and supervision for periods of less than 24 hours a day, unattended by a parent or legal guardian, except children related to an adult member of the family by blood, marriage, or adoption. Family day care home includes a home that gives care to an unrelated minor child for more than 4 weeks during a calendar year. [MCL 722.111(fXiii); MSA 25.358(ll)(f)(iii).]
 

 The dispute in this case is whether defendants’ family day care homes violate the subdivision’s protective covenants. Plaintiffs sought an injunction prohibiting the continued operation of defendants’ day care facilities. In an effort to limit expenses, the parties agreed to file cross motions for summary disposition before engaging in discovery. Plaintiffs moved for partial summary disposition pursuant to MCR 2.116(C)(9). Defendants moved for complete summary disposition pursuant to MCR 2.116(C)(8) and (10). The circuit court granted defendants’ motion for summary disposition and denied plaintiffs’ motion for partial summary disposition, finding that “a restrictive covenant precluding the operation of a family day care home in
 
 *415
 
 a residential setting is contrary to the public policy of the State of Michigan.” Plaintiffs appeal as of right.
 

 This Court has already decided that a family day care home licensed pursuant to MCL 722.111(f)(iii); MSA 25.358(11)(f)(iii) does not violate residential use restrictive covenants in
 
 Beverly Island Ass’n v Zinger,
 
 113 Mich App 322; 317 NW2d 611 (1982). There, the plaintiff homeowners association claimed the family day care home operated by the defendants, Mr. and Mrs. Zinger, violated a restrictive covenant that provided “No lot or building plot shall be used except for residential purposes.”
 
 Id.
 
 at 324. In
 
 Beverly Island, supra
 
 at 326, this Court followed the rule set forth in
 
 Wood v Blancke,
 
 304 Mich 283, 288-289; 8 NW2d 67 (1943), that “the usual, ordinary and incidental use of property as a place of abode does not violate a covenant restricting such use to ‘residence purposes only,’ but that an unusual and extraordinary use may constitute a violation.” This Court also stated the rule that “a business or professional use may not violate a residential use covenant so long as the nonresidentia! use was casual, infrequent or unobtrusive and was not detrimental to the property values of neighbors.”
 
 Id.
 
 In
 
 Beverly Island,
 
 we rejected the plaintiffs argument that the receipt of compensation was the controlling factor in determining whether the defendants’ family day care home was a business and therefore violated the residential use covenant.
 
 Id.
 
 at 326-327. Instead, this Court held “[t]he receipt of compensation may be a factor to consider but its existence or absence is not controlling. . . . [T]he focus must be on the activity involved and how it parallels the ordinary and common meaning of use for residential puiposes.”
 
 Id.
 
 at 327. After considering the obtru
 
 *416
 
 siveness of the activities involved in operating the family day care home and the public policy in favor of family day care homes, this Court held that the defendants’ use of their property to care for children in a family day care home was for residential purposes.
 
 Id.
 
 at 331. This Court further concluded that the extra traffic generated by the arrival and departure of the children in the morning and afternoon was “minimally obstrusive [sic, obtrusive] in light of the overriding public policy in favor of day care homes.”
 
 Id.
 
 We observed that Mrs. Zinger cared for no more than seven children at a time and that the children were cared for “in the home and the adjoining yard, in the manner Mrs. Zinger cares for her own children.”
 
 Id.
 
 at 328. The Court recognized that the only difference between the defendants’ use of their property and the use of the property by a large family was the extra traffic in the morning and the afternoon.
 
 Id.
 

 Plaintiffs argue that this Court’s holding in
 
 Beverly Island
 
 does not apply to this case because their subdivision also has a protective covenant that specifically precludes commercial or business use. We disagree.
 

 Plaintiffs rely on the following passage in
 
 Beverly Island, supra
 
 at 326:
 

 [T]he deed permits residential uses rather than prohibiting business or commercial uses. ... A restriction allowing residential uses permits a wider variety of uses than a restriction prohibiting commercial or business uses.
 

 Although this Court did mention the lack of a specific covenant prohibiting commercial use, this was not the basis of this Court’s decision in
 
 Beverly Island.
 
 Accordingly, we are not required to follow the pas
 
 *417
 
 sage relied on by plaintiffs, which was mere dicta, and we decline to do so.
 
 Watt v Ann Arbor Bd of Ed,
 
 234 Mich App 701, 707; 600 NW2d 95 (1999). We do not believe that the characterization of the use of property as residential or commercial turns on what covenants are present. If we accepted the plaintiffs’ argument to the contrary, our decision today would classify the identical nonintrasive activities that were considered residential in
 
 Beverly Island
 
 as commercial simply because of the presence of a covenant restricting business or commercial use. We believe such a result would be inconsistent. Moreover, our research has revealed that the Indiana Court of Appeals has faced this same issue and has concluded that the presence of a restrictive covenant explicitly prohibiting commercial uses in addition to covenants barring nonresidential use did not preclude the operation of a home day care for less than six children.
 
 Stewart v Jackson,
 
 635 NE2d 186, 192-193 (Ind App, 1994). Accordingly, we believe it is appropriate to follow
 
 Beverly Island
 
 to evaluate whether in this case the defendants’ family day care homes violate the restrictive covenant that specifically prohibits commercial or business enterprises.
 

 Plaintiffs argue that because defendants receive compensation in exchange for their child care services, their family day care homes are commercial, not residential, and therefore violate the covenant specifically precluding commercial or business use. Plaintiffs primarily rely on the Michigan Supreme Court’s decision in
 
 Lanski v Montealegre,
 
 361 Mich 44; 104 NW2d 772 (1960).
 

 In
 
 Lanski,
 
 the Supreme Court considered whether the defendants’ operation of a convalescent home vio
 
 *418
 
 lated deed restrictions that stated owners “shall not use said premises for any commercial enterprise or engage in any commercial undertaking thereon . . .
 
 Id.
 
 at 46.
 
 [2]
 
 The Court held that the defendants’ convalescent home was a commercial use of the property.
 
 Id.
 
 at 50. In reaching its holding, the Court first concluded that “[t]he facts indicate an intent or general plan that the whole subdivision was to be a summer resort area.”
 
 Id.
 
 at 49. In light of this “general plan for a
 
 private resort
 
 area” (emphasis in original), the Court found that “a broader definition [of the term “commerce”] was intended.”
 
 Id.
 
 The Court explained that “[i]n its broad sense commercial activity includes any type of business or activity which is carried on for a profit.”
 
 Id.
 
 In finding that the defendants’ operation of the convalescent home was commercial activity, the Court not only relied on the fact that the defendants charged a fee and made a profit, but also relied on the fact that “[t]he patients, the visitors, the nurses, and the over-all atmosphere detract from the general plan of the private, noncommercial resort area originally intended.”
 
 Id.
 
 at 49-50. Accordingly, we reject plaintiffs’ contention that
 
 Lanski
 
 stands for the proposition that the receipt of compensation is the only factor considered in determining whether the activity violates the protective covenant prohibiting commercial enterprises. In
 
 Lanski,
 
 the Court also considered the nature of the activities conducted on the property when deciding whether the use of the property was commercial. Therefore,
 
 Lanski
 
 is consistent with this Court’s determination in
 
 Beverly
 
 
 *419
 

 Island
 
 that when considering whether the use of property is residential or commercial, “the focus must be on the activity involved and how it parallels the ordinary and common meaning of use for residential purposes.”
 
 Beverly Island, supra
 
 at 327.
 

 This conclusion is also supported by the Michigan Supreme Court’s reasoning in
 
 City of Livonia v Dep’t of Social Services,
 
 423 Mich 466; 378 NW2d 402 (1985). There, the Court rejected the plaintiff’s argument that the operation of a small group home for six developmentaily disabled adults was a business or commercial use of property, reasoning that the homes were “not institutional in nature” and explaining “[t]he fact that the adults may be required to pay for certain items and services . . . does not of itself transform the nature of the activities conducted in the home from residential to commercial.”
 
 Id.
 
 at 528-529. The Court in
 
 City of Livonia
 
 reached this conclusion in the context of a residential use covenant, but as we have already explained, this fact is not determinative.
 

 In this case we consider the identical activities that were considered in
 
 Beverly Island,
 
 the operation of a family day care home, which by definition involves caring for fewer than seven unrelated children. The level of obtrusiveness is therefore the same as it was in
 
 Beverly Island,
 
 i.e., the observable difference between defendants’ family day care homes and homes occupied by large families is minimal.
 

 Moreover, the public policy in favor of family day care homes is even stronger today than it was in 1982 when this Court recognized the overriding public policy in favor of family day care homes in
 
 Beverly Island, supra
 
 at 330-331. In this case we granted leave to file an amicus curiae brief to the Michigan
 
 *420
 
 Association for the Education of Young Children (miaeyc). Of particular interest is the miaeyc’s citation of the Michigan 4C Association (Community Coordinated Child Care) website publication entitled
 
 The Economics of Child Care,
 
 which indicates there is a shortage of licensed child care in Michigan. According to this publication, which is based on data from the 1996 United States Census and the
 
 Michigan Kids Count Data Book, State Profiles of Child Well-Being
 
 (Annie E. Casey Foundation, 1998), the available licensed child care in Michigan can only accommodate eighty percent of children needing care. Moreover, miaeyc cites
 
 Child Care: Making It Work,
 
 the February 1996 report of the Governor’s Advisory Council on Day Care for Children, which emphasizes the importance of the availability of quality child care in the success of Michigan’s welfare reform efforts. Finally, we note that we agree with miaeyc that there is a need for different options for families requiring child care, and that family day care homes provide an important alternative to other types of available child care such as child care centers. We also recognize, as we did in
 
 Beverly Island, supra
 
 at 330, that the Legislature reflects public policy in favor of family day care homes. In addition to the child care organization act, MCL 722.111
 
 et seq.-,
 
 MSA 25.358(11)
 
 et seq.,
 
 we note that in 1988 the Legislature amended the County Zoning Act and the Township Zoning Act to provide that a family day care home “shall be considered a residential use of property for the purposes of zoning and a permitted use in all residential zones, including those zoned for single family dwellings.” MCL 125.216g(2), MSA 5.2961(16g)(2); MCL 125.286g(2);
 
 *421
 
 MSA 5.2963(16g)(2) (added by 1988 PA 447 and 448, respectively).
 

 In light of these public policy considerations, and in light of the fact that the activities involved in operating a family day care home are consistent with the overall plan of the subdivision as a residential area, we find that defendants’ family day care homes do not violate the restrictive covenant specifically prohibiting commercial use. We reach this holding despite the fact that defendants charge for their child care services. The circuit court’s grant of summary disposition in favor of defendants is affirmed.
 

 Affirmed.
 

 [1]
 

 The statute also defines “group day care home”:
 

 “Group day care home” means a private home in which more than 6 but not more than 12 minor children are given care and supervision for periods less than 24 hours a day unattended by a parent or legal guardian, except children related to an adult member of the family by blood, marriage, or adoption. Group day care home includes a home that gives care to an unrelated minor child for more than 4 weeks during a calendar year. [MCL 722.111(f)(iv); MSA 25.358(ll)(f)(iv).]
 

 [2]
 

 The deed restriction attached to the defendants’ property by operation of the doctrine of reciprocal negative easements.
 
 Id.
 
 at 49.